479 A.2d 1354

**Donald A. SININGER**

v.

**Emma G. SININGER.**

**No. 83, Sept. Term, 1983.**

Court of Appeals of Maryland.

Aug. 23, 1984.

Ronald B. Bergman, Hyattsville (Pickett, Houlon & Berman, Hyattsville, on the brief), for appellant.

Dorothy R. Fait, Silver Spring, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY, COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

COUCH, Judge.

The issue presented in this case is whether a parent has a duty, enforceable in equity, to support an adult child who becomes disabled after the age of majority.

On December 10, 1980, Emma Sininger, appellee, filed a Bill of Complaint for Child Support against Donald Sining-

er, appellant, in the Circuit Court for Montgomery County. The parties had been divorced *a vinculo matrimonii* on February 19, 1969. Pursuant to the divorce, appellant paid child support for each of their three children until they reached the age of majority—age twenty one.[1] By court order, payments were ended in August of 1980, all children having reached the requisite age.

By the complaint filed herein, Mrs. Sininger sought support for their daughter Janette, who although age twenty-three at the time, suffered from severe mental illness and was incapable of supporting and caring for herself. At hearings before a domestic relations master testimony focused on when Janette's disability occurred. Appellant contended that Janette was not disabled by her illness until she became an emancipated adult. Both parties agree that after reaching age twenty one, Janette left the family home and held her own apartment and a job. Further, it is uncontested that Janette presently is disabled and requires medical attention. Appellee maintained, however, that Janette's mental illness, hence her disability, began in childhood and that she never was able to care for herself properly. The evidence focused on this question because in ruling on appellant's Motion for Decision of a Question of Law, the master had held that for support to be awarded, appellee had to prove that Janette's mental or physical disability existed before she reached the age of majority.

After hearing the evidence, the master found that Janette was not disabled at the time she attained the age of majority, and he denied support. Appellee excepted to the master's legal and factual conclusions. The circuit court accepted the master's factual finding concerning the time that the disability occurred, but granted appellee's exception to the master's legal conclusion that the duty to sup-

---

**1.** *See* Maryland Code (1957, 1981 Repl.Vol.), Article 1, § 24. Legislative change of age of majority is to be construed prospectively only (from July 1, 1973). *Monticello v. Monticello,* 271 Md. 168, 315 A.2d 520, *cert. denied,* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974) (applied to child support agreement).

port an adult child existed only when the disability preceded emancipation. The court concluded that Janette was currently disabled and that Maryland law imposed an obligation on her parents to contribute to her support. The case was remanded to the master to determine Janette's needs and the relative abilities of her parents to pay. Based on all the testimony, the master recommended child support of $300.00 per month commencing and accounting from January 1, 1982. Both parties excepted to the master's recommendations. The circuit court overruled the exceptions and adopted the master's recommendations.

Mr. Sininger appealed to the Court of Special Appeals and Mrs. Sininger cross-appealed contending that the sum awarded and the retroactive date set were clearly erroneous. Prior to consideration by the intermediate appellate court, we issued certiorari on our own motion to consider this issue of public importance.

Appellant first contends that the equity court lacked jurisdiction to order child support because jurisdiction terminated once the children attained the age of majority. Appellant's contention focuses on the lack of continuing jurisdiction. The complaint, however, although based in equity, is not for modification of the original support order. The complaint here relies on the court's general equity jurisdiction and not on its continuing jurisdiction in the original domestic relations case. Appellant essentially concedes that section 3–602(a) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.),[2] grants the

---

2. The section provides:
   "§ 3–602. Custody, guardianship, maintenance, and support of child.
   (a) *Jurisdiction of courts of equity.*—A court of equity has jurisdiction over the custody, guardianship, legitimation, maintenance, visitation and support of a child. In exercising its jurisdiction, the court may:
   . . . .
   (3) Decide who shall be charged with the support and maintenance of a child, pendente lite or permanently;
   . . . ."

circuit court jurisdiction over a child; and that if the term "child" has been statutorily enlarged it may include more than persons under the age of majority. In the instant case the issue before us is whether an incapacitated adult child is to be treated on equal footing with a minor child. Because we will hold that the parent has a duty to support an incapacitated adult child and because such an adult child is to be treated on equal footing with a minor child, the parents duty is properly enforceable under section 3–602(a), Maryland Code (1974, 1984 Repl.Vol.), Cts. & Jud.Proc. Article.

Appellant contends, and the dissent agrees, that the duty to support a disabled child into adulthood continues because the disability prevents the child from ever becoming emancipated. The reasoning is that because the child is incapable of emancipation, he remains a minor and the obligation continues until the condition changes. Appellant concedes that the parental duty to support exists in the situation where the incapacitation is continuing from the child's minority, but contends that the duty extends no further. Appellant contends that once a child becomes an emancipated adult the obligation of parental support cannot be resumed. We shall refer to this view as the emancipation rationale. Appellant supports these contentions by characterizing *Smith v. Smith,* 227 Md. 355, 176 A.2d 862 (1962), the pivotal case on point, as a case limited to its facts, which involve a child incapacitated during his minority. Essentially, the appellant would draw a distinction in the parents' support obligation based upon the time that the child's disability arose. We do not agree.

In *Borchert v. Borchert,* 185 Md. 586, 45 A.2d 463 (1946), this Court first addressed the issue of a parent's duty to support an adult incompetent child. The Court pointed out that no common law obligation to support adult incompetent children existed, *id.* at 590, 45 A.2d at 465, but noted a

---

Maryland Code (1974, 1984 Repl.Vol.), Cts. & Jud.Proc. Article, § 3–602(a).

tendency in other jurisdictions to expand the common law and to recognize a duty, *id.* at 592, 45 A.2d at 465. The Court, however, chose not to follow the trend in the absence of statutory authority in this state to enforce such a duty. *Id.* at 594–95, 45 A.2d at 466–67. The Court stated:

"However desirable it may be for some power to exist by which a father may be compelled to support his son, ... the Legislature has not seen fit to make the failure to do so a criminal offense although it has so designated such failure in other domestic situations heretofore mentioned. The omission by the legislative branch of the government of such a statute is an indication that the failure to support an incapacitated child is placed by it on a different footing from the failure to support a minor child. We cannot now without further legislative action hold that the divorce statute attempted to be invoked in this case is enlarged to include other than minor children."

*Id.* The Court was content to hold that a parental duty did exist for purposes of the law of the case based upon the concession of the appellant. *Id.* at 592, 45 A.2d at 46. In view of the Court's holding that such a duty was ultimately unenforceable, it was not essential to determine whether the duty was recognized in Maryland.

The General Assembly promptly responded to the legislative omission noted by the Court in *Borchert,* and in 1947 enacted what is now codified as Maryland Code (1957, 1982 Repl.Vol.), Article 27, § 97. The statute provides:

"§ 97. Failure of parent to support destitute adult child.

Any person who has an adult child destitute of means and unable to support himself by reason of mental or physical infirmity, who is possessed of or able to earn means sufficient to provide such child with necessary shelter, food, care and clothing and who neglects or refuses so to do, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both."

The Court again faced the issue in *Smith v. Smith*, 227 Md. 355, 176 A.2d 862 (1962). In *Smith*, a chancellor's order for the divorced father to pay support for his physically incapacitated adult child, who lacked other means of support, was upheld. *Id.* at 360, 176 A.2d at 865. The Court reviewed the *Borchert* decision and then held:

"It is significant, we think, that at the first opportunity after the *Borchert* decision further legislative action was in fact taken. At its 1947 session the Legislature enacted an act now codified as § 97 of Art. 27, Code (1957), making it a criminal offense for a parent, possessing the means, to fail to provide for a destitute adult child where mental or physical infirmity makes it impossible for the child to care for itself. *The passage of this act is a clear indication of legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child.*"

*Id.* (emphasis added).

In *Smith*, the Court did nòt draw a distinction based on emancipation. The Court held that the legislative enactment made it clear that the duty to support an adult incapacitated child was on equal footing with the duty to support a minor child. 227 Md. at 360, 176 A.2d at 865. The holding in *Smith* is based on Article 27, section 97, of the Maryland Code (1957, 1982 Repl.Vol.). This statute contains no suggestion that a distinction should be based on emancipation. We agree with the holding in *Smith* that the legislative intent in this enactment was clear.

■■ · Although the facts of *Smith* involved a child incapacitated during his minority,[3] it is significant that the Court

---

**3.** The Court's opinion in *Smith* indicates only that the child in question was an adult, and was incapacitated, but the opinion does not indicate expressly when his incapacitation occurred. In his brief, appellant confuses the incapacitated son with another son, nineteen years old, who was involved in a separate issue. We can infer from the opinion that the case did involve a child incapacitated during his minority because the court did not address the issue presented here today. The briefs in the *Smith* case confirm this inference. The adult

did not include such facts in the recitation of facts, rationale, or holding of its opinion. The fact that the child was incapacitated during his minority is crucial to the emancipation rationale. The absence of this crucial fact persuades us that the Court did not intend the interpretation that the appellant and dissenting opinion would attribute to the Court's opinion. It is apparent that the Court in *Smith* was aware of the emancipation rationale and declined to base its holding on such reasoning. Further, in *Borchert, supra,* the Court noted that an emancipation rationale was used in some cases in other jurisdictions, 185 Md. at 592, 45 A.2d at 465, yet the Court apparently resisted adopting this rationale for Maryland. Thus, where the Court twice was faced with the perfect situation to adopt the rationale it declined to do so. We are not persuaded that an emancipation rationale can be properly attributed to the *Smith* case. We instead rely on the plain language of Article 27, section 97, and the holding of *Smith v. Smith,* and hold that a parent who has the means to do so, has a duty to support an incapacitated adult child whose disability commenced after she attained the age of majority.

This conclusion is reinforced by comparison with the statutes dealing with the converse of the issue at hand, *i.e.,* the duty of a child to support the child's parents. Md.Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.), Art. 27, §§ 104–110, comprising the subtitle, "Destitute Parents," treat this duty. The subtitle was first enacted by Chapter 637 of the Acts of 1916 and was amended into substantially its present form by Chapter 675 of the Acts of 1939. To facilitate the reader's comparison of the present "Destitute Parents" subtitle with §§ 97–103, comprising the subtitle, "Destitute Children," we have set forth the two subtitles in parallel in

---

son was afflicted with epilepsy at age six and had additional psychological problems. Appendix to Appellant's Brief at E. 9, *Smith, supra.* Also, we note that the appellee in *Smith* argued the theory that the obligation to support continues because an incapacitated child is incapable of becoming emancipated. Brief of Appellee at 11–13, *Smith, supra.*

an appendix to this opinion where we have supplied italics to the words "parent" and "child." This comparison makes immediately apparent that the General Assembly essentially tracked the then existing "Destitute Parents" subtitle when it responded to *Borchert* with the "Destitute Children" subtitle enacted by Chapter 113 of the Acts of 1947. Sections 97–103 dealing with destitute adult children are obviously the converse of §§ 104–110 dealing with destitute parents.

The foregoing is significant in its relevance to interpretation of the phrase "[a]ny person who has an adult child," which introduces § 97. That phrase's companion in present § 104 is the phrase, "[a]ny person having a parent or parents." It is clear from the comparison of § 97 with § 104 and from the way in which the words "parent" and "child" are employed in both subtitles as a whole that the use of the verb "to have" with "person" as its subject and either "an adult child" or "a parent or parents" as its objects describes the relationship of parent and child. The "person who has an adult child," referred to in § 97, is a person who stands in the relation of parent to the "adult child." The person who has a "parent or parents" in § 104 stands in the relation of child to the parent or parents. Thus, § 97's use of the term, "person," is not limited to one who has the "care, custody and possession" of the adult child as those terms are used in § 96 and as suggested by the dissent.[4] Indeed, when Chapter 113 of the Acts of 1947 brought § 97 into the Maryland Code the Act was described

---

**4.** Art. 27, § 96 provides:
   "Desertion or abandonment of child.
   Any person having the care, custody or possession of any child under eighteen years of age, who shall desert or abandon such child with the intent that it shall become a public charge, or without making provision for its proper support and maintenance for a period of at least three years with some responsible person or institution duly authorized to take and care for infants, shall be guilty of a misdemeanor . . . ."
Maryland Code (1957, 1982 Repl.Vol.).

by its title as one "relating to the support of destitute adult children by their parents."

One significant difference between the statutes relating to the support by financially able parents of destitute and disabled adult children, at the time of their enactment in 1947, and the then subtitle relating to the support of destitute and disabled parents by their financially able children is that the introductory section of the latter was limited to "[a]ny *adult* person ... having a parent or parents ...." (Emphasis added.) *See* Md.Code (1939), Art. 27, § 98. By Chapter 36 of the Acts of 1952 the limitation, "adult," was deleted from that section which is presently § 104. The deletion expanded § 104 to impose the duty to support destitute parents on their minor children in addition to their adult children, when, in either instance, the children were financially capable of doing so. This 1952 expansion by the General Assembly of the statute dealing with support of the preceding generation by the succeeding generation strongly indicates that the 1947 parallel statute dealing with support by the preceding generation of incapacitated adults of the succeeding generation should not be forced into a restricted construction. The plain meaning of "adult child ... unable to support himself by reason of mental or physical infirmity" includes Janette. Section 97 is not limited exclusively to the child who has chronologically reached the age of majority, who suffers from a disability incurred during minority and extending uninterruptedly beyond the age of majority, and who thereby has not, as a technical legal matter, been emancipated.

There are statutes other than those in Art. 27 which impose on a parent the duty to support a child, and our interpretation of the scope of §§ 97–103 may be tested against them in an effort to discern a consistent policy, if any. Currently such statutes include those dealing with the expense of patients in state hospitals, with paternity, and with marital property. At the time present Art. 27, § 97 was enacted the hospital reimbursement statutes seem to have been construed to include incapacitated, but previously

emancipated, adult children within the parents' support duty. The later enacted paternity and marital property statutes reflect the same policy.

In 1947 obligations to reimburse for the care of inmates in state psychiatric hospitals and in chronic disease hospitals were imposed by Md.Code (1939, 1947 Cum.Supp.), Art. 59, title, "Lunatics and Insane," subtitle, "Lunatic or Insane Paupers." In that subtitle § 4 placed liability on "a father or mother, or both for a son or daughter ...." With respect to chronic disease hospitals, Md.Code (1947 Supp.), Art. 43, "Health," § 528 provided that "there shall be collected from the patient or his family as much of the actual cost of maintenance as is reasonably possible ...." Chapter 509 of the Acts of 1949 expanded on this theme by providing for investigation of the financial condition of "persons legally chargeable" with the patient's support. See Md.Code (1951), Art. 43, § 562(a). These provisions for reimbursement of psychiatric and chronic disease hospital costs were construed to apply to the parents of adult children. This is demonstrated by the amendments to both statutes effected by Chapter 164 of the Acts of 1964 which limited the parental obligation to make reimbursement toward the cost of care rendered to a son or daughter to cases where the children were under twenty-one years of age. In the title to Chapter 164 the General Assembly stated its purpose to be "to remove the liability of parents for payment toward the cost of care of their adult children ...." These provisions are today Md.Code (1982), §§ 16–101(f)(2) and 16–102(a) of the Health General Article which incorporate the present age of majority. While the policy was changed in 1964 with respect to health care reimbursement, no comparable change was or has since been made to the dependent adult children subtitle of Art. 27.

Disputed paternity and the obligation to support illegitimate children were litigated in 1947 under former Art. 12, title, "Bastardy and Fornication," of Md.Code (1939, 1947 Cum.Supp.). A civil procedure for determining paternity and enforcing support was substituted by Chapter 722 of

the Acts of 1963. See Md.Code (1957, 1981 Repl.Vol., 1983 Cum.Supp.), Art. 16, §§ 66A to 66P. Section 66H(a)(1) provides that the equity court may order the declared father to pay a certain sum for the support and maintenance of the child

"until the child reaches the age of 18 years, dies, marries or becomes self-supporting, whichever event first occurs. However, if the child, having reached 18 years of age, is destitute of means and unable to support himself by reason of mental or physical infirmity, the court may require payments to be made or continued during the continuance of the mental or physical infirmity."

We do not believe that this language necessarily applies only when the incapacity occurred prior to reaching eighteen years of age. First, the expression "having reached 18 years of age" is applicable to a nineteen year old as well as an eighteen year old. Had the legislature intended to implement an emancipation rationale, they could have simply and clearly stated instead: "upon reaching 18 years of age . . . ." Further, in our view this provision is not limited only to a continuing incapacitation situation because the legislature did not limit the power of the court to continuing existing payments, but rather, provided that the court could require "payments to be made *or* continued." (Emphasis added.)

The most recent expression by the General Assembly in a somewhat analogous area is under the Marital Property Act, Md.Code (1974, 1984 Repl.Vol.), §§ 3–6A–01 to 3–6A–08 of the Courts and Judicial Proceedings Article. That statute employs the term "minor child" in defining a "family home" which is the subject of special provisions in § 3–6A–06. Under the Marital Property Act a " '[m]inor child' includes a child 18 years of age or older who, because of mental or physical disability, is dependent upon a parent." § 3–6A–01(d). Once again, the General Assembly has not indicated any intention to restrict this definition to a child who is unemancipated because of continuing disability.

In sum, most of the analogous statutes are consistent with our interpretation of the "Destitute Children" subtitle of Art. 27. In any event, these statutes fail to reflect any definite and consistent policy which is contrary to our interpretation and which might otherwise justify placing a very restrictive construction on the plain language of Art. 27, § 97.

We also note that the Maryland Institute for Continuing Professional Education of Lawyers, Inc., *Estate Planning for Families with Handicapped Dependents* 332–333 (1983) advises practitioners that transfers by a parent to a child generally are not taxable as gifts so long as they are in satisfaction of a legal obligation to support the child. Then, citing *Smith v. Smith, supra,* 227 Md. 355, 176 A.2d 862 and Art. 27, § 97 it is stated that "[i]n Maryland, the parents of an adult disabled child do have an obligation of support," without limiting the statement to the adult child who is unemancipated because of continuing disability.

Finally, in consideration of the dissent in the instant case we are presented with an extreme and emotional hypothetical to support appellant's view. But this Court decides actual cases, not hypotheticals. We could easily imagine a hypothetical that would have absurd results under an emancipation rationale approach. For instance, a man's two daughters, one age 17, the other age 18, are injured and paralyzed in the same car accident. The younger daughter can rely on her father's support indefinitely, yet the eighteen year old daughter has no right to support. We reject the inequitable results that could follow from the appellant's approach. We prefer to await an actual case and decide it, and distinguish it if appropriate, at that time.

In the instant case we are concerned with the plight of Janette Sininger. We believe that the vast majority of married parents would care and support a mentally disabled twenty-three year old daughter. Indeed, in this case Janette's mother has taken Janette into her care to care for her; it would be no different if the Siningers remained

married. The rights of a child should not be made to suffer from her parents' divorce. Washburn, *Post-Majority Support: Oh Dad, Poor Dad,* 44 Temp.L.Q. 319, 345 (1971). Under the appellant's approach, Janette would so suffer.

Janette's case illustrates the difficulty of the emancipation rationale in cases of mental, rather than physical disability. Unlike physical injuries, mental disabilities often develop over time. The evidence in the instant case traced the roots of Janette's mental disability into her childhood. Yet, her mental difficulties, though present all along, did not become disabling, according to the master's finding, until after she passed the age of majority. Although she has suffered all along, her father is freed from any obligation to support her because the master found that her sufferings did not disable her until after her twenty-first birthday. Under the emancipation rationale we can imagine two twenty-three year olds, both incapacitated, one incapacitated for five years (after majority), the other for six years (before majority). The result is that one is entitled to support and the other is not. The arbitrary age chosen for the age of majority should not override the clear policy expressed in plain language by the legislature in Art. 27, § 97. We cannot accept the inconsistency and inequity that would follow from applying an emancipation rationale as urged by appellant.

Therefore, we hold that the instant case is within the ambit of *Smith v. Smith,* 227 Md. 355, 176 A.2d 862 (1962); [5]

---

**5.** We are aware of the decisions of other jurisdictions upon which appellant relies; however, the cases are not persuasive. In *Pocialik v. Federal Cement Tile Co.,* 121 Ind.App. 11, 97 N.E.2d 360 (1951), the intermediate appellate court pointed out that there was no statute or decision of the state's supreme court imposing an obligation on the parent. Thus, it is unlike the law of Maryland. We also note that the Indiana court cited our decision in *Borchert, supra,* which suggests that we should not be persuaded by *Pocialik,* 97 N.E.2d at 363. Appellant also relies upon *Kruvant v. Kruvant,* 100 N.J.Super. 107, 241 A.2d 259 (1968). We note the New Jersey intermediate appellate court also relied upon *Borchert, supra,* which in view of *Smith v. Smith, supra,* limits its applicability here.

the parental duty to support an adult incapacitated child existed in this case regardless of the child's emancipation. The duty is enforceable under the general equity jurisdiction of the circuit court under § 3–602(a) of the Courts and Judicial Proceedings Article, Md.Code (1974, 1980 Repl.Vol., 1983 Cum.Supp.).

In view of our holding we need not address appellee's contention that the circuit court was clearly erroneous in finding that the child was not disabled until after she reached the age of majority. The distinction between when the onset of illness occurs and when the illness becomes disabling is irrelevant under our holding.

■ Appellee also contended on her cross-appeal that the sum awarded, and the retroactive date set, by the circuit court were clearly erroneous. Upon reviewing the considerations and decisions made by the domestic relations master, and accepted by the circuit court, we cannot say that the findings were clearly erroneous.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. TWO–THIRDS OF THE COSTS TO BE PAID BY APPELLANT/CROSS APPELLEE; ONE–THIRD OF THE COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT.

### APPENDIX

| Destitute Children | Destitute Parents |
|---|---|
| § 97. Failure of parent to support destitute adult child. | § 104. Failure of children to support destitute parents. |

Any person who has an adult *child* destitute of means and unable to support himself by reason of mental or physical infirmity, who is possessed of or able to earn means sufficient to provide such *child* with necessary shelter, food, care and clothing and who neglects or refuses so to do, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both.

Any person having a *parent or parents* within this State, such *parent or parents* being destitute of means of subsistence and unable either by reason of old age, infirmity or illness to support himself or herself, who is possessed of or able to earn means sufficient to provide such *parent or parents* with necessary shelter, food, care and clothing, and neglects or refuses so to do, shall, upon conviction thereof, be deemed guilty of a misdemeanor and, upon conviction in any court of the State having original jurisdiction, shall be punished by a fine not exceeding $500.00 or imprisonment in the Maryland House of Correction for not more than one year, or both, in the discretion of the court.

### § 98. Oath by child; procedure against parent.

(a) Whenever any *child* destitute of means of subsistence and unable either by reason of mental or physical infirmity to support himself shall, in writing under oath filed with a State's Attorney (the term State's Attorney as used in this subtitle includes deputy State's Attorney or assistant State's Attorney acting under authority given by the State's Attorney) accuse his *parent* of being possessed of or able to earn means sufficient to provide him with necessary shelter, food, care and clothing and has failed to do so, the State's Attorney may require witnesses other than the *parent* accused to appear before him for such examination of witnesses as may be deemed in the public interest. After such examination or inquiry the State's Attorney may file an information in the circuit court of the county against the accused *parent* charging him with the offense of nonsupport.

(b) Nothing in this section, however, shall prevent the State's Attorney, if he sees fit, from submitting any such nonsupport case to the grand jury, as in other criminal cases, for such action as it may deem proper, instead of proceeding by way of information.

### § 99. Inquiry by State's Attorney; disobedience to subpoena, etc.

The State's Attorney may, for the purpose of facilitating the handling of such cases, issue subpoenas and summonses requiring the personal attendance of any person, firm, corporation or association, other than the accused *parent,* to give testimony in connection with such examination or inquiry, or requiring the production of any and all documentary matter in connection with such examination or inquiry. The State's Attorney may also administer oaths and affirmations, examine witnesses and receive evidence. In the

### § 105. Oath by parent; procedure against child.

(a) Whenever any *parent* destitute of means of subsistence and unable either by reason of old age, infirmity or illness to support himself or herself shall in writing under oath filed with a State's Attorney (the term State's Attorney as used in this subtitle includes deputy State's Attorney or assistant State's Attorney acting under authority given by the State's Attorney) accuse his or her adult *child* of being possessed of or able to earn means sufficient to provide such *parent* with necessary shelter, food, care and clothing and has failed to do so, the State's Attorney may require witnesses other than the *child* accused to appear before him for such examination of witnesses as may be deemed in the public interest. After such examination or inquiry the State's Attorney may file an information in the circuit court of the county against the accused *child* charging him with the offense of nonsupport.

(b) Nothing in this section, however, shall prevent the State's Attorney, if he sees fit, from submitting any such nonsupport case to the grand jury, as in other criminal cases, for such action as it may deem proper, instead of proceeding by way of information.

### § 106. Inquiry by State's Attorney; disobedience to subpoena, etc.

The State's Attorney may, for the purpose of facilitating the handling of such cases, issue subpoenas and summonses requiring the personal attendance of any person, firm, corporation or association, other than the accused *child,* to give testimony in connection with such examination or inquiry, or requiring the production of any and all documentary matter in connection with such examination or inquiry. The State's Attorney may also administer oaths and affirmations, examine witnesses and receive evidence. In case of

case of disobedience to a subpoena or summons, or the contumacy of a witness appearing before him, the State's Attorney may invoke the aid of the circuit court of the county; and the court may thereupon issue an order requiring the person, firm, corporation or association, to obey the subpoena or summons and to give testimony and to produce any and all documentary matter deemed necessary by said court for such investigation or inquiry. In case any person, firm, corporation or association refuse to obey such an order of the court after the same has been served on the witness, such person, firm, corporation or association shall be deemed in contempt of court and shall be punished therefor, subject to the right to appeal as now provided or hereafter regulated.

disobedience to a subpoena or summons, or the contumacy of a witness appearing before him, the State's Attorney may invoke the aid of the circuit court of the county; and the court may thereupon issue an order requiring the person, firm, corporation or association, to obey the subpoena or summons and to give testimony and to produce any and all documentary matter deemed necessary by said court for such investigation or inquiry. In case any person, firm, corporation or association refuse to obey such an order of the court after the same has been served on the witness, such person, firm, corporation or association shall be deemed in contempt of court and shall be punished therefor, subject to the right to appeal as now provided or hereafter regulated.

### § 100. Notice to parent accused by information.

The *parent* accused or about to be accused of nonsupport by an information filed by a State's attorney shall be notified by the State's attorney in writing of: (1) the time and place of hearing in the examination or inquiry, (2) the right of such *parent* to appear at such hearings and to produce such evidence or information touching upon said investigation as he may desire, and (3) the right of such *parent* to testify in his own behalf before the State's attorney, provided he notifies the State's attorney of his desire to do so and signs a written waiver to the effect that any testimony which he may give may be used against him in the event that he is tried on any information or indictment that may be brought against him.

### § 107. Notice to child accused by information.

The *child* accused or about to be accused of nonsupport by an information filed by a State's attorney shall be notified by the State's attorney in writing of: (1) the time and place of hearing in the examination or inquiry, (2) the right of such *child* to appear at such hearings and to produce such evidence or information touching upon said investigation as he may desire, and (3) the right of such *child* to testify in his own behalf before the State's attorney, provided he notifies the State's attorney of his desire to do so and signs a written waiver to the effect that any testimony which he may give may be used against him in the event that he is tried on any information or indictment that may be brought against him.

### § 101. Payments for support; bond.

Whenever a *parent* accused of nonsupport, after proceedings before a State's attorney, shall consent thereto in writing, or whenever upon failure to give such consent such *parent* shall be found guilty, the court shall issue an order directing such *parent:*

### § 108. Payments for support; bond.

Whenever a *child* accused of nonsupport, after proceedings before a State's attorney, shall · consent thereto in writing, or whenever upon failure to give such consent such *child* shall be found guilty, the court shall issue an order directing such *child:*

(1) To pay for the maintenance and support of said *child,* or to pay an equal sum to the county or to the City of Baltimore, as the case may be, if said *child* be a public charge, during the life of said *child* or until the *child* is possessed of other means of adequate support. The sum to be paid may be agreed upon, if consent proceedings be had, or in the absence of agreement, such sum as the court may fix, with due regard to the circumstances of the accused *parent,* and

(2) To give bond to the State of Maryland in such penalty as the court may fix, with good and sufficient securities, conditioned on making the payments required by the court's order, or any amendments thereof. Failure to give such bond shall be punished by commitment in the jail until said bond be given, but not exceeding one year.

§ 102. Release of parent on probation; recognizance.

Instead of imposing the punishment for failure to give bond, the court may, in its discretion and with due regard to the financial ability of the accused *parent,* release such *parent* from custody on probation for the period during which the accused shall be required to make payments, upon his entering into a recognizance in such sum as the court shall direct, with or without securities. The condition of the recognizance shall be such that if the accused *parent* shall make his personal appearance at the court whenever ordered to do so within the period during which he shall be required to make such payments, and shall further comply with the terms of the order, or of any subsequent modification thereof, then the recognizance shall be void, otherwise of full force and effect. If the court be satisfied by information and due proof under oath that the accused has violated the terms of such order, it may forthwith proceed to impose sentence under the original conviction of failure to give

(1) To pay for the maintenance and support of said *parent,* or to pay an equal sum to the county or to the City of Baltimore, as the case may be, if said *parent* be a public charge, during the life of said *parent* or until the *parent* is possessed of other means of adequate support. The sum to be paid may be agreed upon, if consent proceedings be had, or in the absence of agreement, such sum as the court may fix, with due regard to the circumstances of the accused *child,* and

(2) To give bond to the State of Maryland in such penalty as the court may fix, with good and sufficient securities, conditioned on making the payments required by the court's order, or any amendments thereof. Failure to give such bond shall be punished by commitment in the jail or the house of correction until said bond be given, but not exceeding one year.

§ 109. Release of child on probation; recognizance.

Instead of imposing the punishment for failure to give bond, the court may, in its discretion and with due regard to the financial ability of the accused *child,* release such *child* from custody on probation for the period during which the accused shall be required to make payments, upon his or her entering into a recognizance in such sum as the court shall direct, with or without securities. The condition of the recognizance shall be such that if the accused *child* shall make his personal appearance at the court whenever ordered to do so within the period during which he shall be required to make such payments, and shall further comply with the terms of the order, or of any subsequent modification thereof, then the recognizance shall be void, otherwise of full force and effect. If the court be satisfied by information and due proof under oath that the accused has violated the terms of such order, it may forthwith proceed to impose sentence under the original conviction of failure to give

bond. In the case of forfeiture of a recognizance and enforcement thereof by execution, the sum recovered may, in the discretion of the court, be paid, in whole or in part, to the *child* or to the county or to the City of Baltimore, as the case may be, if the *child* be a public charge.

§ 103. Release from order, bond, etc.

Upon the death of the *child* or the *parent*, or upon the *child* securing other adequate means of support, or upon the *parent* becoming unable to earn or losing possession of means sufficient to provide support for the *child*, the *parent* and his sureties shall be released from the terms of any court order rendered and of any bond or recognizance given.

bond. In the case of forfeiture of a recognizance and enforcement thereof by execution, the sum recovered may, in the discretion of the court, be paid, in whole or in part, to the *parent* or to the county or to the City of Baltimore, as the case may be, if the *parent* be a public charge.

§ 110. Release from order, bond, etc.

Upon the death of the *parent* or the *child*, or upon the *parent* securing other adequate means of support, or upon the *child* becoming unable to earn or losing possession of means sufficient to provide support for the *parent*, the *child* and his sureties shall be released from the terms of any court order rendered and of any bond or recognizance given.

ORTH, Judge, dissenting.

Donald A. Sininger, the father of Jannette Sininger, presents this question for review on his appeal from the judgment entered by the Circuit Court for Montgomery County:

Whether a parent has a civil duty enforceable by the court of equity to support his once emancipated, adult daughter who after attaining the age of majority experiences mental disability?

The majority answer this question by holding that

a parent who has the means to do so, has a duty to support an incapacitated child whose disability commenced after she attained the age of majority.

In concluding that "the parental duty to support an adult incapacitated child existed in this case regardless of the child's emancipation," the majority provide a classic example of judicial legislation in the guise of judicial interpretation. The Court's usurpation of the Legislature's function leads to a holding which is without support in law or practicality. The holding strains to reach a result; it is case oriented rather than law oriented. This is apparent from the majority's confession that "[i]n the instant case we are concerned with the plight of Jannette Sininger." While the concern is commendable, the majority holding reflects what they feel the law should be rather than what it actually is. The majority close their eyes to practical applications of their holding beyond this case. For example, assume a 66 year old father and a 45 year old son. The father worked hard and faithfully until he retired at the age of 65. Being thrifty and conservative in his life-style, he had saved enough to spend his remaining years in relative comfort. The father had supported his son, a ne'er-do-well even as a minor, until the child attained the age of majority, at which time the son fled the home and embarked on a life of crime. In and out of jail thereafter, and a thoroughly dissolute character, at age 45 he drove his car into a tree, and as a result of the injuries he suffered he was paralyzed. He had

not seen or attempted to get in touch with his father for over 20 years, and, in fact had evidenced no concern whatsoever about his father's welfare. Now, destitute of means and unable to support himself by reason of his physical infirmity, he calls upon his father to support him. Under the majority's holding, the father has the duty to do so, and if he fails in that duty he is liable criminally and civilly. The father would also, in all likelihood, be responsible to third parties who furnished the son with necessaries. I cannot conceive that such a result was contemplated by the Legislature. The majority characterize this hypothetical as extreme and emotional. They declare that they "prefer to await an actual case and decide it, and distinguish it, if appropriate, at that time." It is true that my hypothetical invokes none of the sympathy or concern present with respect to the unfortunate woman in the instant case. But the holding of the majority permits no distinction. By the majority's rule a parent, for as long as he shall live, faces the possibility that he will have the legal duty to support his adult child thrust upon him, regardless of the child's prior independence. The duty of care and support, invoked upon the birth of the child is not only active during the child's minority, but remains dormant thereafter so long as the parent and the child are alive. The duty is awakened, with no further ado, at any time the child becomes incapacitated. In the words of Mr. Bumble, "If the law supposes that, the law is a ass, a idiot." This Court has recognized that "[o]ne of the well understood canons for the construction of statutes is that courts should avoid absurd consequences." *In Re Special Investigation No. 281*, 299 Md. 181, 200, 473 A.2d 1 (1984). To me, the holding of the majority results in absurd consequences, and I cannot accept it.

Before I explain why I think that the law is not what the majority would have it be, I note that the majority found no need to address the mother's contention on cross-appeal that the circuit court was clearly erroneous in finding that Jannette was not disabled until after she reached the age of

majority.[1]   The majority say: "The distinction between
when the onset of the illness occurs and when the illness
becomes disabling is irrelevant under our holding."   For
reasons which will be apparent *infra,* I find it necessary to
address the contention.   The Domestic Relations Master
who conducted the plenary hearing on the petition found
from the evidence before him that Jannette was not dis-
abled at the time she attained the age of majority.   The
equity court accepted this determination.   It said: "[T]here
is sufficient credible evidence to support the Master's find-
ing that she was not in fact disabled at the time she
attained the age of 21 years."   From the findings of fact on
the evidence adduced as set out in the Master's report I am
in full agreement with the Chancellor that there was credi-
ble evidence to support the Master's finding.   Therefore,
the court was not clearly erroneous in that judgment.
Md.Rule 886.

The majority state that what they have held to be the
parental duty "is enforceable under the general equity
jurisdiction of the circuit court under section 3–602(a) of the
Courts and Judicial Proceedings Article, Maryland Code"
(1974, 1984 Repl.Vol.).   The opinions of this Court have time
and again made perfectly clear that the statutory declara-
tion set out in this section—"[a] court of equity has jurisdic-
tion over the ... support of a child"—applies only to minor
children.   This Court said in *Price v. Price,* 232 Md. 379,
384, 194 A.2d 99 (1963) that the statute is "declaratory of
the inherent power of equity over *minors....* "   (Emphasis
supplied).   The statute was referred to as concerning mi-
nors as recently as *Stancill v. Stancill,* 286 Md. 530,
533–534, 408 A.2d 1030 (1979).   *See* in addition to the cases
cited therein, *Taylor v. Taylor,* 246 Md. 616, 619, 229 A.2d
131 (1967) and *Coleman v. Coleman,* 228 Md. 610, 613, 180

---

1.   "Incapacitated," "disabled," and "incompetent" are bespoken herein
in terms of "a mental or physical infirmity."

"Destitute" is used in the context of without means or the ability to
be self-supporting by reason of a mental or physical infirmity.

A.2d 875 (1962), and the cases cited in those opinions. The majority say that "if the term 'child' has been statutorily enlarged it may include more than persons under the age of majority." They then assert that because they will hold now that a parent has a duty to support an incapacitated adult child, the word "child" has been statutorily enlarged and is within the ambit of § 3–602(a). I do not believe that the term "child" has been statutorily enlarged to encompass an incapacitated adult child, and even if the parental duty is as the majority hold it to be, the enforceability of that duty will have to be on some authority other than § 3–602(a).

The majority expressly look to Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 97, as applied in *Smith v. Smith,* 227 Md. 355, 176 A.2d 862 (1962), to support their holding. What spurred the enactment of this statute is readily apparent.

"There was no common law obligation to support adult, incompetent children; neither was there any to support infant children...." *Borchert v. Borchert,* 185 Md. 586, 590, 45 A.2d 463 (1946). The Poor Relief Act of 43 Eliz. Ch. 2 required the father and the mother, among other relatives, of every poor, old, blind, lame, and impotent person, or other poor person unable to work, to relieve and maintain such person at their own charges, if they were of sufficient ability to do so. Annot., 1 A.L.R.2d 910, 935 (1948). Sir William Blackstone, Knt., stated that

[N]o person is bound to provide a maintenance for his issue unless where the children are impotent and unable to work, either through infancy, disease or accident, and then is only obligated to find them with necessaries....

1 *Blackstone's Commentaries* 449 (Lewis's ed. 1898). This statement was based on 43 Eliz. Ch. 2.[2] *Borchert* at 591, 45 A.2d 463. In any event, a number of the American states adopted the view that the common law went no

---

**2.** 43 Eliz. Ch. 2 is not one of the English statutes in force in Maryland. *Borchert v. Borchert,* 185 Md. 586, 590–591, 45 A.2d 463 (1946).

further than to impose on parents the duty of supporting their minor children, and that as a general rule there was no obligation on the part of a parent to support an adult child. 1 A.L.R.2d at 914. *See* Recent Decision, *Domestic Relations—Child Support—Parental Duty to Support a Subnormal Adult Child,* 48 Miss.L.J. 361 (1977); Comment, *The Parental Duty to Support Disabled Adult Children,* 9 De Paul L.Rev. 245, 246–247 (1960).

In Maryland any doubt that parents were obliged to support their minor children was removed by the enactment early on of a statute now codified as § 88(b) of Art. 27. The statute made it a criminal offense for any parent to desert or wilfully neglect to provide for the support and maintenance of his or her minor child. Later the General Assembly enacted another statute to the same effect.[3] These statutes left open, however, whether under Maryland law there was any parental duty to support an adult child. This Court had the question before it in *Borchert* but did not reach it because the father from whom support was sought expressly did "not dispute the obligation of the father to care for children, no matter what age, physically or mentally unable to take care of themselves...." 185 Md. at 592, 45 A.2d 463. He agreed "with this general statement of the law." *Id.* The Court accepted this concession as the law of the case, but did not declare it to be the law of the State. *Id.*

The father's concession in *Borchert* was made on these facts. The case arose from a divorce action and concerned a petition to amend an order for child support included in the decree granting a divorce a vinculo matrimonii. At the time of the order the child was a minor and shortly thereaft-

---

**3.** "Any person having the care, custody or possession of any child under eighteen years of age, who shall desert or abandon such child with the intent that it shall become a public charge, or without making provision for its proper support and maintenance for a period of at least three years with some responsible person or institution duly authorized to take and care for infants, shall be guilty of a misdemeanor...." Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 96.

er became totally and permanently incapacitated. He reached the age of majority some 15 years later and continued to be a helpless invalid. The mother, who had custody, could not properly provide for the child, but the father, a man of comfortable means (he owned valuable property and was the recipient of a large income), was fully able to do so. The mother's petition asked that the father be ordered to pay a reasonable and adequate sum for the support of the child as long as it continued under the disability.

The case not only brought into the open the inadequacies of the Maryland law on the matter but spotlighted those inadequacies. The Court determined that even if there were a duty on a father to support an incapacitated adult child, there was no provision in the Maryland law by which it could be enforced. The Court noted that there was no statute making the failure to perform the conceded duty a criminal offense. And neither the statute bestowing on a court [4] of equity original jurisdiction over the support of children [5] nor the statute empowering the court in an a mensa divorce action to order who shall be charged with the support of a child was sufficient to enable enforcement of such duty. Those statutes, the Court observed, referred to "children" and "unless we attempt judicial legislation that word must be construed as meaning children in the ordinary sense; that is those who have not reached their majority." *Borchert*, 185 Md. at 593, 45 A.2d 463. The Court observed:

However desirable it may be for some power to exist by which a father may be compelled to support his son, under the circumstances set out in these proceedings, the Legislature has not seen fit to make the failure to do so a

---

**4.** Then Maryland Code (1939) Art. 16, § 41; now Maryland Code (1973, 1984 Repl.Vol.) § 3–602 of the Courts and Judicial Proceedings Article.

**5.** Then Maryland Code (1939) Art. 16, § 85; now Maryland Code (1957, 1981 Repl.Vol.) Art. 16, § 25.

criminal offense although it has so designated such failure in other domestic situations.... The omission by the legislative branch of the government of such a statute is an indication that the failure to support an incapacitated child is placed by it on a different footing from the failure to support a minor child. We cannot now without further legislative action hold that the divorce statute attempted to be invoked in this case is enlarged to include other than minor children. *Id.* at 594–595, 45 A.2d 463.

The Court held that the demurrer to the Bill of Complaint should have been sustained and reversed the order overruling it.

The General Assembly promptly responded to the plain suggestion in *Borchert.* It enacted Acts 1947, Ch. 113, now set out in Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 97. The statute reads:

Any person who has an adult child destitute of means and unable to support himself by reason of mental or physical infirmity, who is possessed of or able to earn means sufficient to provide such child with necessary shelter, food, care and clothing and who neglects or refuses so to do, shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both.

In *Smith v. Smith,* 227 Md. 355, 176 A.2d 862, the Court was again concerned with the duty of a father to support his incapacitated destitute adult child. The matter arose in an action for permanent alimony. On appeal, the father challenged an order included in the decree that he support his incapacitated adult child. The Court thought that it was significant that "at the first opportunity after the *Borchert* decision further legislative action was in fact taken." *Smith* at 360, 176 A.2d 862. "The passage of [the 1947] act," the Court declared, "is a clear indication of legislative intent to place failure to support an incapacitated child on

an equal footing with failure to support a minor child." *Id.* In the Court's "opinion, therefore, the Chancellor was justified in recognizing this legislative policy and awarding support payments for the disabled adult child, whom the testimony showed was destitute of other means of maintenance." *Id.*

*Borchert* made clear that any duty on the part of a parent to support an incapacitated, destitute, adult child would have to be under the authority of a statute. *Smith* certainly stands for the proposition that an equity court in a domestic case may order a parent to support such a child, *insofar as that duty is imposed by the 1947 statute.*[6] *Smith*, however, does not define the scope and extent of the duty the statute imposes on a parent.

The father urges that the *Smith* holding did not encompass the situation in which the child became incapacitated after attaining the age of majority. In other words, he argues that the duty applied only when the incapacity occurred before the child was emancipated. The rationale for this view is that if an incapacitated child reaches the age of majority it is not thereby emancipated but remains a minor. The majority dismiss this contention on the ground that *Smith* did not base its holding on such reasoning. As I read *Smith*, the Court said no more in its brief treatment of this matter than that the equity court could recognize a legislative policy inherent in the statute and that this legislative policy was to place failure to support an incapacitated child on an equal footing with failure to support a minor child. *Smith* simply does not express a position on whether a parental duty to support an incapacitated destitute adult child arises only when the incapacity occurs before the child

---

6. We point out that Acts 1947, Ch. 113 also established a comprehensive scheme whereby every incapacitated destitute child could obtain support from its parent through a State's Attorney. Maryland Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.) Art. 27, §§ 98–103. *See also,* Art. 27, §§ 90–93.

is emancipated or whether the duty is invoked even though the incapacity occurred after emancipation. The factual circumstances, however, on which that opinion was decided, were that the incapacity of the child occurred before it attained the age of majority. As the majority point out, this was not clear from the opinion, but it was evident from the briefs submitted. The *Smith* Court was certainly aware of it. It seems to me that a view that the opinion went no further than the facts required it to do is more sound, in the absence of a stated position, than a notion that the opinion went beyond the facts in its holding. In short, I do not believe that *Smith*, in its very brief treatment of the subject, teaches what the majority would have it say. But if it does, I think that it is wrong, and I would renounce it without further ado so that it may not serve as the basis for more bad law. In any event, I turn, as the majority finally do, to Art. 27, § 97. As *Borchert* makes clear, the question here can only be resolved upon due regard of the statute.[7]

As we have seen, *supra*, the opinion in *Borchert*, which prompted the enactment of the statute, made perfectly clear that the incapacity of the child in that case occurred before the child attained the age of majority. This circumstance was, therefore, readily available to the Legislature. The desire of that body to remedy the deficiency in the law discovered in *Borchert* was in the light of that factual situation, and not as to an incapacity occurring after a child had been emancipated.

---

**7.** Cases in other jurisdictions are of no help. They are decided on the common law, which under *Borchert* is not applicable in Maryland, or under their own peculiar statutes, or upon no authority except the raising of a moral obligation to the status of a legal obligation. Even within those areas of authority there is a great diversity of opinion. *See* Annot., 1 A.L.R.2d 910 (1948); Recent Decision, *Domestic Relations—Child Support—Parental Duty to Support a Subnormal Child*, 48 Miss.L.J. 361 (1977); 59 Am.Jur.2d, *Parent and Child*, §§ 102–103 (1971); Comment, *The Parental Duty to Support Disabled Adult Children*, 9 De Paul L.Rev. 245 (1960); Case Note, *Family Law—Duty of Parent to Support an Adult Child*, 11 Drake L.Rev. 60 (1961).

Section 97 of Article 27 imposes the duty to support an incapacitated destitute adult child on "[a]ny person who has ..." the child. The designation of the person chargeable with support is plain, unambiguous and unequivocal. The duty is not restricted to parents, but, as the statute clearly says, to "any person." So when the statute speaks in terms of one who "has" a child it is not referring only to one who "has a child" in the sense that a person is the child's natural father or mother. Since this Court has determined that the legislative intent in enacting § 97 was to place "failure to support an incapacitated child on equal footing with failure to support a minor child," *Smith*, 227 Md. at 360, 176 A.2d 862, I look for guidance with respect to the meaning of "has an adult child" to § 96 imposing the duty to support a minor child. Section 96, unlike § 88(b) which runs only to "any parent," imposes the duty to support a minor child on "[a]ny person having the care, custody or possession" of the child. I think that it is apparent that the phrase "has an adult child" used in § 97 contemplates "having the care, custody or possession" of the adult child as spelled out in § 96. Each section must be read in the light of the other.

This leads to the matter of emancipation.[8]

The law imposes a certain bondage upon minor children, but it also permits release therefrom. Such release, which sets the child free from legal subjection and gives it the right to labor for itself and collect and control its own wages, is called "emancipation."

A child is emancipated, of course, upon arriving at the age of majority, although not where, on account of some infirmity of mind or body rendering him incapable of taking care of himself, he is compelled to remain with the parent. Emancipation of this kind is effected by operation of law. 59 Am.Jur.2d § 93 at 191.

---

8. For a history of the doctrine of emancipation *see* H. Clark, *The Law of Domestic Relations in the United States* 240–241 (1968).

*See Monticello v. Monticello,* 271 Md. 168, 172, 315 A.2d 520, *cert. denied,* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974); Washburn, *Post-Majority Support: Oh, Dad, Poor Dad,* 44 Temp.L.Q. xxxxxxxx 319, 344–346 (1971). A minor child is subject to the authority and control of its parents. "The father and mother are the joint natural guardians of their [minor] child ... and are jointly and severally charged with its support, care, nurture, welfare and education. They shall have equal powers and duties...." Md.Code (1957, 1983 Repl.Vol.) Art. 72A, § 1. A parent is entitled to the services and earnings of a minor child. *Id.* § 2. The legal rights and liabilities as to both the parents and the child are extinguished, however, upon emancipation. 59 Am.Jur.2d § 93 at 191–192. A severance of the relationship between parents and minor child by the coming of age of a child who is capable of taking care of himself

> relinquishes the parent's claim to the child's services, thus conferring on him the right to his own time and earnings. It frees the parents from their duty of care and the child from their custody, control, and authority. It terminates the parents' legal duty to support the child.... *Id.*

Once completely emancipated by reaching the age of majority with no impediment sufficient to overcome the presumption of emancipation arising by the coming of age, the adult child thereafter cannot relapse into pupilage except by the consent, express or implied, of parent and child. *Cf.,* J. Areen, *Family Law,* 847–848 (1978).

It may be that Jannette was completely emancipated before she attained the age of majority. *See* H. Clark, *The Law of Domestic Relations in the United States,* § 8.3 (1968). In any event, she was clearly completely emancipated upon becoming of age. The obligation of her father to support Jannette was then ended by the terms of the decree for support and was later formally terminated by court order. She was employed and earned enough to support

herself; her parents, of course, had no claim on her earnings or services. She established a domicile separate from that of either parent. She enjoyed the power to enter into binding contracts and conveyances. In short, she went her own way as an adult, free and clear of any parental control and authority.

The mere fact that Jannette subsequently became disabled did not change this relationship with her father. He could not force his authority and control on her, dictate where she was to reside, or otherwise run her life. That is, she did not become "de-emancipated" by reason of her disability; she did not thereby relapse into pupilage. Her father certainly had a moral obligation to care for her, but he had no legal obligation to do so. In other words, as between Jannette and her father, the father did not fit into the category of a "person who has an adult child" within the contemplation of § 97.

The majority seeks support in § 3–6A–01(d) of the Courts and Judicial Proceedings Article wherein "minor child" is defined as including "a child 18 years of age or older who, because of mental or physical disability, is dependent upon a parent." They point out that the definition does not recognize a distinction based on emancipation. I do not believe that this statute, enacted in 1978, and concerned with an entirely different matter—the distribution of marital property in divorce and annulment—reflects any legislative intent with respect to the enactment of Art. 27, § 97 thirty-three years prior. The utter lack of connection, even by inference, of § 97 and § 3–6A–01(d) is readily apparent when considered in the light of § 3–6A–06(a). That section explains that the authority of the court regarding the marital property "shall be exercised to permit the children of the family to continue to live in the environment and community which is familiar to them and to permit the continued occupancy of the family home and possession and use of family use personal property by a spouse with

custody of a minor child who has a need to live in that home."

A more appropriate indication of the thinking of the Legislature with respect to the support of children is found in the Health-General Article of the Maryland Code. Md. Code (1982, 1983 Cum.Supp.) § 16–102 of the Health-General Article announces that "[i]t is the policy of this State to obligate each recipient of services and, to the extent provided in this title, those legally responsible for the recipient to pay, if financially able, for the cost of care that is received by the recipient of services." [9] A person chargeable for the cost of services includes "[a]ny responsible relative...." § 16–101(c)(1). A "responsible relative" encompasses "[t]he parents of a recipient of services who is a *minor*...." § 16–101(f)(2). (Emphasis supplied). Thus the Legislature has not seen fit to make a parent pay for the support and care of an adult child. The parent would be chargeable, however, for the support and care of an adult child who was incapacitated at the time it attained the age of majority, for in that circumstance it would retain the status of a minor, the presumption of emancipation having been rebutted by the fact of the incapacity. This is precisely how I read § 97.

The incongruity of the majority's holding is obvious when considered in the light of the above provisions of the Health Article. Under the majority view, the parents have the duty of care and support, not only of a minor child, but also of an incapacitated destitute adult child regardless of the child's emancipation. But if the care and support of an incapacitated destitute adult child is provided by the State, then there is no legal duty imposed on the parents to

---

**9.** " 'Recipient of services' means an individual who receives care, maintenance, treatment, or support in a facility or program that is operated or funded wholly or partly by the Department." Maryland Code (1982, 1983 Cum.Supp.) § 16–101(e)(1) of the Health-General Article.

reimburse the State. The obligation of parents to reimburse the State is only with respect to a minor child.

Statutory provisions regarding the paternity of a child born out of wedlock also shed light on the Legislature's policy as to child support. The man declared to be the father may be ordered by the equity court to pay a certain sum for the support and maintenance of the child

> until the child reaches the age of 18 years, dies, marries or becomes self-supporting, whichever event first occurs. However, if the child, having reached 18 years of age, is destitute of means and unable to support himself by reason of mental or physical infirmity, the court may require payments to be made or continued during the continuance of the mental or physical infirmity. Md.Code (1957, 1981 Repl.Vol.) Art. 16, § 66H(a)(1).

This provision clearly recognizes emancipation as serving to extinguish the duty to provide support. And the language used for the continuance of support payments after the child has attained the age of majority—"if the child having reached 18 years of age, *is* destitute of means and [incapacitated]"—patently applies only when the incapacity occurred prior to reaching 18 years of age.

The majority's attempt to distinguish the health and paternity statutes which I have referred to is far from persuasive. I find the majority's view to be more self-serving than logical. Contrary to their assertions, I think, for the reasons herein set out, that those statutes and the statute here reflect a consistent legislative policy, namely, that there is no parental duty to support a destitute adult child who becomes incapacitated after he has been emancipated.

It is my opinion that the Master below was correct and that the Chancellor was wrong. I would reverse the judgment of the Circuit Court for Montgomery County.

I am authorized to state that Chief Judge MURPHY and Judge COLE concur in the views here expressed.