POCIALIK ET AL. *v.* FEDERAL CEMENT TILE COMPANY.

[No. 18,132. Filed March 17, 1951.]

*Sevald & Sevald,* of Hammond; and *Roman E. Posanski,* of Chicago, Illinois, for appellant.

*Jones, Obenchain & Butler,* of South Bend, for appellee.

WILTROUT, C. J.—Pauline Pocialik, by her guardian, filed an application for compensation by reason of the death of her father. On November 4, 1947, her father was killed in an accident arising out of and in the course of his employment with appellee. The Industrial Board found that she was neither a presumptive dependent nor a dependent in fact of decedent, and entered an award that she take nothing by her application.

The finding as to dependency is the only issue involved in this appeal. All other facts necessary to sustain an award of compensation were stipulated.

Decedent's place of residence was Calumet City, Illinois, and he was employed at appellee's plant at Hammond, Indiana.

The board made the following findings of fact, based principally upon the stipulations of the parties and admissions in the pleadings.

"It is further found that Pauline Pocialik, plaintiff herein, was, at the time of the death of her

father, thirty years of age and was a daughter of decedent; that she left her parent's home and control at the age of twenty-one; that she married one Edward A. Pocialik on September 22, 1934, and that there were born to such union two children, Charlotte, age thirteen years, and Charles, age ten. Thereafter said plaintiff and her husband removed to King County, Washington.

"It is further found that some time during the month of August, 1946 plaintiff's then husband sent plaintiff and her two children back to the decedent's home in Calumet City; that shortly thereafter it was discovered that said plaintiff was mentally incompetent. She was so adjudged by the County Court of Cook County, Illinois, and on February 20, 1947 was committed to Chicago State Hospital at Dunning, Illinois, where she lived continuously as a ward of the State of Illinois, until her death.

"It is further found that on January 9, 1947 plaintiff's husband commenced, in the Superior Court of the State of Washington for King County, an action for divorce from plaintiff; that an interlocutory order was entered on February 25, 1947 by said court, and on August 26, 1947 final decree of divorce was entered therein.

"It is further found that on July 1, 1948 John D. Zilinski was appointed guardian of plaintiff by the Probate Court of Cook County, Illinois, and as such Guardian brought plaintiff's cause of action filed herein.

"Thereafter the plaintiff, Pauline Pocialik, died at Chicago State Hospital on March 6, 1950, and that on the 8th day of May, 1950, John D. Zilinski was appointed her administrator.

"It is further found that plaintiff herein, Pauline Pocialik, the decedent herein, Steve Zilinski, were at the time of decedent's death and all times referred to in this action, a resident of Calumet City, Illinois; . . ."

It was stipulated that the daughter from and after her commitment to the Chicago State Hospital, was

incapable of earning a livelihood. She was without means of self support.

The first question which we are called upon to decide is whether the daughter was a presumptive dependent within the meaning of Acts of 1947, ch. 162, § 8, p. 523; Burns' 1940 Replacement (1949 Supp.), § 40-1403a, which provides:

> "The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in the preceding section:
>
> (e) An unmarried child over the age of eighteen (18) years who is either physically or mentally incapacitated from earning his or her own support, upon a parent upon whom the laws of the state impose the obligation of the support of such unmarried child."

Appellants insist that the issue of dependency must be determined under the laws of Indiana and not those of Illinois, and that the same rules apply as if deceased and his daughter were residents of Indiana. Appellants base this contention upon the fact that this state has adopted the theory that the rights and duties under the Indiana Workmen's Compensation Act are contractual, and that the provisions of the Act are a part of the contract of employment.

Appellee takes the position that it is not necessary to decide whether the laws of Indiana or those of Illinois apply; that the laws of neither state imposed upon the deceased employee the obligation to support his adult daughter under the facts of this case. We have examined the laws of both states from this standpoint.

It was held in Illinois that where an adult pauper child had been committed to a state insane asylum,

the state of Illinois became liable for his maintenance under Illinois statutes and his father was under no legal obligation to support him. *Eulette* v. *Zilske* (1921), 222 Ill. App. 128.

We have found no statute of this state imposing upon a father the duty of supporting his adult daughter under the facts of this case. Neither have we found any case decided by the Supreme Court or this court holding that there is such an obligation.

1 R. S. 1852, ch. 61, § 1, p. 351; Burns' 1946 Replacement, § 1-101, provides that where not inconsistent with constitutional and statutory law, the law governing this state is the common law of England, and statutes of the British Parliament made in aid thereof prior to the fourth year of the reign of James the First (with certain specific exceptions), and which are of the general nature, not local to that kingdom. The applicability of the English common law is discussed at length in *Ketelsen* v. *Stilz* (1916), 184 Ind. 702, 111 N. E. 423.

Appellants argue that by the common law of England there was a duty upon parents to support their defective adult children. We find, however, that the common law of England did not so provide prior to the settlement of Jamestown, nor did it so provide over three centuries later. The only obligation was that which might be imposed under the statute of 43rd Elizabeth, ch. 2, entitled, "An ACTE for the Releife of the Poore." Section 6 thereof provides:

> "AND be it further enacted, That the Father and Grandfather, and the Mother and Grandmother, and the Children of everie poore olde blind lame and impotente person, or other poore person not able to worke, beinge of a sufficient abilitie, shall at their owne Chardges releive and maintaine everie such poore person, in that manner and accordinge to that rate, as by the Justices of the

Peace of that Countie where such sufficient persons dwell, or the greater number of them, at their generall Quarter Sessions shalbe assessed; upon paine that everie one of them shall forfeite Twentie shillings for everie monethe whiche they shall faile therein."

Under this statute an assessment and order of the justices was a condition precedent to the existence of any liability at all. *Coldingham Parish Council* v. *Smith* (1918), 2 King's Bench Division 90; *Borchert* v. *Borchert* (1946), 185 Md. 586, 45 A. 2d 463, 162 A. L. R. 1078; Eversley, *The Law of Domestic Relations*, p. 515 (London 2d ed., 1896).

Accordingly, there are decisions in some states that in the absence of statute there is no obligation on the part of a parent to support such children, even though they are unable to care for themselves upon or after attaining their majority. *Sedam* v. *Sedam* (1948), 52 Ohio L. Abs. 141, 78 N. E. 2d 914; *Moss* v. *Moss* (1931), 163 Wash. 444, 1 P. 2d 916; *Beilstein* v. *Beilstein* (1945), 31 Ohio Ops. 116, 43 Abs. 10, 61 N. E. 2d 620; *Bank* v. *Shanklin* (1913), 174 Mo. App. 639, 161 S. W. 341.

The tendency in most jurisdictions in this country where the question has arisen, however, based upon either a construction of statutory law or a judicial expansion of the common law, is to find that there is an obligation to support defective children who are unable to support themselves upon attaining their majority. Some of these cases are predicated upon statute; others find a lack of emancipation; and still others find a legal obligation following the moral obligation. Anno. 1 A. L. R. 2d 910.

The Indiana cases recognize that as a general rule, "A parent is not civilly liable for the support of his

adult child. . . . There is no civil obligation to support a child, who, having reached an age where he is able to provide for himself, has left the home of his parents, and who is no longer amenable to parental discipline or restraint, and who no longer renders service to the parent." *Manners* v. *State* (1936), 210 Ind. 648, 5 N. E. 2d 300. See also: *Wallace* v. *Ellis* (1873), 42 Ind. 582; *Ellebarger* v. *Swiggett et al.* (1891), 1 Ind. App. 598, 28 N. E. 110.

There is, however, a continuing obligation of support which ceases only when the necessity of support ceases in the case of children of weak mind or body who are unable to support themselves after coming of age and remain unmarried in the parent's home. *State* v. *Troxler* (1930), 202 Ind. 268, 173 N. E. 321; *Zakrocki* v. *Zakrocki* (1945), 115 Ind. App. 556, 60 N. E. 2d 745. See also: 39 Am. Jur., Parent and Child, § 69, p. 710; 67 C. J. S., Parent and Child, § 17, p. 704.

But once the parent's liability has terminated, such liability will not be restored by a subsequent change in the condition of the child. 67 C. J. S., Parent and Child, § 17, p. 704; *Haynes' Administrator* v. *Waggoner* (1865), 25 Ind. 174.

In *Breuer* v. *Dowden* (1925), 207 Ky. 12, 268 S. W. 541, 42 A. L. R. 146, it is said: "that if at the time the child becomes of age he is reasonably physically and mentally sound and fairly able, if willing, to make and earn his own support, the parent is not liable for his debts or obligations thereafter contracted even though he should later become sick or mentally unbalanced and therefore incapacitated to earn a livelihood. . . . We must hold that the father's liability for the debts of his adult daughter, even for necessities, terminated on her arrival at the age of twenty-one

years; and having once terminated cannot be revived even though she became sick and incapacitated while continuing as a member of his household." See also: *Mt. Pleasant Overseers* v. *Wilcox* (1893), 2 Pa. Dist. 628; *Gaydos et al.* v. *Domabyl, Appellant* (1930), 301 Pa. 523, 152 Atl. 549.

We conclude that the daughter was not a presumptive dependent.

We next proceed to determine whether the uncontradicted evidence and the legitimate inferences flowing therefrom, require the sole conclusion that the daughter was a dependent in fact of her deceased father. This question must be determined as of the time of the occurrence of the accident. Burns' 1940 Replacement (1949 Supp.), § 40-1403.

There was some testimony to the effect that the father furnished money to buy clothing of the estimated value of $8.40 for the daughter while she was at the Chicago State Hospital. The hospital furnished the food for the daughter at the regular dining room at regular times. There was testimony that the father left money at the commissary nearly every week for extras such as candy, gum, and ice cream. There was a conflict as to the amount of the contributions.

We cannot say that the evidence, which the board was entitled to weigh, compels the conclusion that decedent's contributions were looked to, depended and relied upon, in whole or in part for means of reasonable support of the daughter, or that she was a dependent in fact of her father.

Award affirmed.

NOTE.—Reported in 97 N. E. 2d 360.