**Charles H. NELSON, Appellant,**

v.

**Marie P. NELSON, Appellee.**

No. 86–1578.

District of Columbia Court of Appeals.

Argued April 14, 1988.
Decided Oct. 6, 1988.

**110**

Philip L. Kellogg, Washington, D.C., for appellant.

Paul Arkush, for appellee.

Marion E. Baurley, Washington, D.C., for appellee, on behalf of the daughter, Melonie Nelson.

Matthew B. Bogin and Beth Goodman, Washington, D.C., were on the brief for amicus curiae, District of Columbia Ass'n for Retarded Citizens.

Before PRYOR, Chief Judge, and NEWMAN and BELSON, Associate Judges.

BELSON, Associate Judge:

Melonie Nelson is the adult mentally retarded child of Charles and Marie Nelson, her divorced parents. The Superior Court, upon entering an absolute divorce in 1974, ordered Mr. Nelson to pay $100 per month in child support. When Melonie reached the age of twenty-one in 1985, Mr. Nelson announced his intention to cease paying child support, arguing that by statute a parent's legal duty to support his or her child terminates when the child reaches the age of majority. In this opinion, we consider the important question whether, as the trial court concluded, there exists in the District of Columbia a common law duty on the part of a parent to support his or her child after the child reaches majority if the child is physically or mentally disabled. We hold that the common law imposes that duty, and remand the case to the trial court for a reassessment of how the obligation to support Melonie Nelson should be borne by her parents at this juncture in her life.

I.

The facts in this case are undisputed. In 1974, the Superior Court granted Mr. and Mrs. Nelson an absolute divorce, and awarded Mrs. Nelson custody of Melonie, their mentally retarded minor child. The court ordered Mr. Nelson to pay $100 per month in child support. On December 11, 1985, less than a month after Melonie turned 21, Mr. Nelson filed a motion to terminate, or in the alternative to reduce, the court ordered support payments.

The motion came before Judge Eilperin who appointed a guardian *ad litem* to represent Melonie's interests, and heard Mr. Nelson's motion on March 26, 1986. Both Mrs. Nelson and Melonie opposed Mr. Nelson's motion to terminate or reduce support. On October 10, 1986, the trial court issued a thoughtful and comprehensive Memorandum and Order. *Nelson v. Nelson*, 114 Daily Wash.L.Rptr. 2437 (November 24, 1986) [hereinafter *"Memorandum and Order"*].

With respect to Melonie, the trial court found on the basis of the evidence adduced at the hearing that:

> Melonie Nelson is the twenty-one year old daughter of Charles and Marie Nelson. She has suffered from a mental handicap since birth. She has a full scale IQ of 53, and functions roughly at the level of a second grader. Melonie's level of mental retardation is in the mild to moderate range. She lives at home with her mother and attends the Grimke Special Education Center in Northwest Washington. The parties concede that at present Melonie is unable to function independently; she depends, and for the foreseeable future will depend, on her mother for her care. [Footnote omitted].

*Memorandum and Order, supra,* at 2437. In addition, the trial court found that

> in 1980 [Mr. Nelson] retired on disability from the Washington Metropolitan Area Transit Authority as a result of a back injury suffered in 1977. Mr. Nelson receives disability payments of approxi-

mately $180 per month. Due to financial difficulties that arose in conjunction with his loss of income he was adjudged bankrupt in August 1983. Mr. Nelson has remarried and lives with his new wife and their three children. While his wife works full time, Mr. Nelson testified that with the exception of an occasional short-term job he is unable to work. Nevertheless, thus far Mr. Nelson has been denied Social Security disability benefits. *Id.* at 2443.

The trial court concluded that there exists in the District of Columbia a common law parental support obligation for post-majority children who by reason of mental disability are unable to support themselves. In addition, the court denied Mr. Nelson's motion to modify his support payments, noting that throughout his financial difficulties, including injury, disability, and bankruptcy, Mr. Nelson had been able to make support payments with regularity. Thus, the court concluded that although Mr. Nelson's financial circumstances may have changed over the course of the preceding decade he had failed to carry his burden of proving a material change affecting his ability in the future to support Melonie in the amount of $100 per month.[1] This appeal followed.

## II.

■ Eleven years ago in *Nelson v. Nelson*,[2] 379 A.2d 713 (D.C.1977) [hereinafter *"Nelson I"*], this court, recognizing that "[t]he general rule in the District of Columbia is that a parent's legal duty to support a child terminates when the child reaches majority," *id.* at 715, held that a father was not required to maintain his son beyond his twenty-first birthday where, although the son was blind in one eye, he was able to care for himself and earn a living. Today this court confronts the question expressly left open in *Nelson I, viz.,* "whether, in the absence of statutory authority, we might adopt a rule requiring parental support beyond majority for truly disabled children." *Id.* at 715. We now adopt such a rule.

It is well settled in the District of Columbia that, as a general proposition, a parent's legal duty to support a child terminates when that child reaches the age of majority. D.C.Code § 16–916 (1981 & 1988 Supp.). *Nelson I, supra,* 379 A.2d at 715; *Spence v. Spence*, 266 A.2d 29, 30 (D.C. 1970); *Jones v. Jones*, 262 A.2d 601, 603 (D.C.1970). D.C.Code § 30–401 (1988) provides that

> [n]otwithstanding any rule of common or other law to the contrary in effect on July 22, 1976, the age of majority in the District of Columbia shall be 18 years of age, except that this act shall not affect any common-law or statutory right to child support.

Thus, it is recognized in the District of Columbia that for purposes of child support, the age of majority is twenty-one. *Butler v. Butler*, 496 A.2d 621, 622 (D.C. 1985) ("Child support obligations in the District of Columbia continue until age twenty-one.") (citing *Rittenhouse v. Rittenhouse*, 461 A.2d 465, 466 (D.C.1983)).

Although a parent's obligation to support his or her child ordinarily ceases when the child reaches the age of majority, certain exceptions to this general rule exist. For example, a parent remains responsible under statute for the maintenance costs of a mentally ill child hospitalized even after the child reaches the age of majority. *Nelson I, supra,* 379 A.2d at 715 (citing D.C.Code § 21–586 (1981)). The D.C.Code is silent, however, with respect to an obligation on

---

1. Taking into account "Mr. Nelson's tenuous financial condition," the trial court also concluded that "it would be inequitable to hold Mr. Nelson liable for support payments otherwise accruing between the time of Melonie's twenty-first birthday and this order," and thus ordered only "that Mr. Nelson is to recommence monthly support payments of $100 as of November 1, 1986." *Memorandum and Order, supra,* at 2445.

2. By coincidence, in both the 1977 case and the instant case, the parties bear the surname "Nelson." For the record, we note that in the 1977 case the parties were John L. Nelson and Alice C. Nelson, and in the instant case the parties are Charles H. Nelson and Marie P. Nelson. We know of no relationship between the two Nelson families. For purposes of clarity, we shall hereafter refer to the 1977 case as *Nelson I,* and presumably the instant case will become known as *Nelson II.*

the part of a parent to provide for the financial needs of a post-majority child who is physically or mentally disabled but who is not hospitalized. That is the question before us today.

In the absence of statutory enactment, this court will look to the common law. As Judge Prettyman stated, the term "common law" means "a system of law not formalized by legislative action, not solidified but capable of growth and development at the hands of judges." *Linkins v. Protestant Episcopal Cathedral Found.,* 87 U.S.App.D.C. 351, 354–55, 187 F.2d 357, 360–61 (1950). The common law and all British statutes in force in Maryland on February 27, 1801, remain in force in the District of Columbia unless they are inconsistent with provisions of our code.[3]

Appellant Mr. Nelson urges that in reaching a determination regarding the common law of Maryland this court must defer to the Maryland high court's determination regarding its own common law. Citing *Borchert v. Borchert,* 185 Md. 586, 45 A.2d 463, 465 (1946), appellant argues that Maryland does not recognize a common law duty of support for disabled children past the age of majority. In *Borchert,* the Court of Appeals of Maryland considered whether a divorced father was financially responsible for his post-majority disabled son. The court observed that "[t]here was no common law obligation to support adult, incompetent children; neither was there any to support infant children although an obligation, both moral and legal, was early recognized in this state." *Id.* at 465. The Court of Appeals, however, did not rule on the question of whether there existed in Maryland, in 1946, a common law duty to support an adult, incompetent child. Rather, after noting the trend toward recognizing such a duty, either through legislation

or "judicial expansion of the common law," *id.* at 465, it accepted the following concession set forth in the father's brief: " 'We do not dispute the obligation of the father to care for children, no matter what age, physically or mentally unable to take care of themselves and agree with this general statement of the law.' " *Id.* at 465. The court treated the father's statement as the law of the case. We therefore reject appellant's argument that Maryland common law supports his position, and turn to survey the state of the common law generally in our sister jurisdictions.[4]

There is no question that, at common law, there developed a parental duty to support minor children. Invoking the oft-quoted passage from Kent's Commentaries, Judge Eilperin noted in his opinion that

[t]he wants and weaknesses of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law.... The obligation on the part of the parent to maintain the child, continues until the latter is in a condition to provide for its own maintenance.

*Memorandum and Order, supra,* at 2444, quoting 2 Kent's Commentaries on American Law 182–83 (1854). Consistent with this view, we have previously recognized that "[c]hild support is a common law right which arises by virtue of the existence of the family relationship." *Butler v. Butler,* 496 A.2d 621, 622 (D.C.1985), citing *Pleasant v. Washington Sand & Gravel Co.,* 104 U.S.App.D.C. 374, 375–76, 262 F.2d 471, 472–73 (1958); *District of Columbia*

---

**3.** *Linkins v. Protestant Episcopal Cathedral Found., supra,* 87 U.S. App.D.C. at 354, 187 F.2d at 360. *See* D.C.Code § 49–301 (1981). "In 1776, Maryland adopted the common law as it then existed in England." *Perkins v. United States,* 446 A.2d 19, 23 (D.C.1982). More generally, "all common law in force in Maryland remains in force as part of the law of the District unless repealed or modified by statute." *United States v. Tucker,* 407 A.2d 1067, 1069

(D.C.1979) (citing *O'Connor v. United States,* 399 A.2d 21, 25 (D.C.1979)).

**4.** We note that soon after issuance of *Borchert,* the Maryland legislature amended its statute as "a clear indication of legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child." *Smith v. Smith,* 227 Md. 355, 360, 176 A.2d 862, 865 (1962).

*ex rel W.J.D. v. E.M.*, 467 A.2d 457 (D.C. 1983).

Although early common law thus recognized a parental duty of support for minor children, it appears that the early common law did not extend that duty of support beyond minority, not even for physically or mentally disabled children. *See generally* Annotation, *Parent's Obligation to Support Adult Child*, 1 A.L.R.2d 910 (1948); 59 AM.JUR.2D *Parent and Child* §§ 89–90 (1987) [hereinafter "59 AM.JUR.2D"]. To the contrary, substantial authority supports the proposition that, as a matter of early common law, the parental support obligation ended at the time the child reached the age of majority irrespective of the child's physical or mental disabilities. *E.g.,* Comment, *Domestic Relations–Child Support–Parental Duty to Support a Subnormal Adult Child*, 48 MISS. L.J. 361, 361–62 (1977) ("At common law, the parent's legal obligation to support was restricted to minor children of the marriage. Consequently, in the absence of statutory, contractual, or constitutional provisions, the parental duty to support automatically terminated at the age of majority. Indeed, strict application of this limitation denied assistance not only to 'normal' adult children, but also to mentally and physically impaired offspring.") (footnotes omitted); 59 AM.JUR.2D, *supra*, § 89 at 229 ("The common law went no further than to impose on parents the duty of supporting

their minor children."); *Moss v. Moss*, 163 Wash. 444, 448, 1 P.2d 916, 918 (1931) ("The duty of a parent to provide support for an adult son who is unable to earn his livelihood because of bodily infirmity or by reason of mental disability is statutory. No legal liability existed at common law."); *Napa State Hospital v. Flaherty*, 134 Cal. 315, 316–17, 66 P. 322, 323 (1901) (any duty to support an adult disabled child was "purely a creation of ... statute" since "[n]o such right existed at common law."); *Monroe County v. Teller*, 51 Iowa 670, 672, 2 N.W. 533, 534 (1879) (father "no more liable ... than a stranger" would be for support of insane adult son).[5]

The existence of a parental duty of support for adult disabled children at the time of early common law was considered by the court in *Pocialik v. Federal Cement Title Co.*, 121 Ind.App. 11, 16, 97 N.E.2d 360, 362 (1951) (en banc). There, "[a]ppellants argue[d] that by the common law of England there was a duty upon parents to support their defective adult children." The *Pocialik* court concluded, however, "that the common law of England did not so provide prior to the settlement of Jamestown, nor did it so provide over three centuries later." *Id.* Consistent with this conclusion, the court found that

there are decisions in some states that in the absence of statute there is no obligation on the part of a parent to support

---

**5.** The conclusion that early common law did not recognize a parental duty of support for adult disabled children is not beyond challenge. For example, Judge Eilperin, stating that William Wordsworth is as good a source of the common law as Kent's Commentary, quoted the following passage in support of an affirmative finding regarding the existence of an early common law duty of support for adult disabled children:

[I]f an Idiot is born in a poor man's house, it must be taken car[e of] and cannot be boarded out, as it would be by gentlefolks, or sent [to a] public or private receptacle for such unfortunate beings. [Poor people] seeing frequently among their neighbors such objects, easily [forget what]ever there is of natural disgust about them and have t[herefore] a sane state, so that without pain or suffering they [perform] their duties toward them.

*Memorandum and Order, supra*, at 2444, quoting Letter from William Wordsworth to John

Wilson (June 7, 1802), *reprinted in The Letters of William and Dorothy Wordsworth*, 1787–1805, 356 (1967). Judge Eilperin recognized that this quote, in which Wordsworth was writing about his poem "The Idiot Boy," might be offensive to some by reason of its use of the phrase "idiot," but explained that in the late 1700s this term was in common usage and that Wordsworth used it with great sympathy. *See Memorandum and Order, supra*, at 2444 & n. 6.

As additional authority supporting the proposition of an early common law parental duty of support extending beyond the age of majority, Judge Eilperin cited John Brydall, *Non Compos Mentis: or, the Law Relating to Natural Fools, Mad Folks, and Lunatick Persons* at 29 (1700) ("And Idiots, from their Nativity, were accounted always within Age; and therefore, the Custody of Them was perpetual, for long as they lived....."). *Memorandum and Order, supra*, at 2444.

such children, even though they are unable to care for themselves upon or after attaining majority. [Citations omitted.]
. . . .

The tendency in most jurisdictions in this country where the question has arisen, however, based upon either a construction of statutory law *or a judicial expansion of the common law,* is to find that there is an obligation to support defective children who are unable to support themselves upon attaining their majority. Some of these cases are predicated upon statute; others find a lack of emancipation; and still others find a legal obligation following the moral obligation. [Emphasis supplied.]

*Id.* 97 N.E.2d at 363. This latter point is consistent with an observation we made in *Nelson I,* where we noted in passing that "[m]any jurisdictions have, by case law, also imposed on parents a duty to support physically disabled children after majority." *Nelson I, supra,* 379 A.2d at 715.

Our review of how other courts have treated the issue of parental support obligation for adult disabled children is consistent with the court's conclusion in *Pocialik,* and suggests a strong trend favoring recognition of such a duty.[6] Appellant points to only one court that has recently considered the question of a parent's obligation to support an adult disabled child, in the absence of statute, and has concluded that no such obligation exists. The Supreme Court of Mississippi, in *Watkins v. Watkins,* 337 So.2d 723, 724 (Miss.1976), concluded in a one page decision that "[w]e find no statute vesting jurisdiction in the chancery court to impose a duty on parents

to support adult children" and thus declined to do so on its own because "at common law, the duty imposed on the parents to support their children ceased when the children reached majority." As we believe this opinion demonstrates, *Watkins* is contrary to the great body of authority recognizing the existence of such a parental duty to support, and nothing in *Watkins* persuades us to follow it.

This trend toward recognition of a parental duty of support for adult disabled children is so strong that we need encumber our inquiry no further with the question of whether there existed such a duty in the days of Blackstone. We have previously stated that D.C.Code § 49–301, which provides for the common law of the District of Columbia, "was not intended by Congress to freeze the common law at a particular date and act as a bar to the judicial function of revising and enlarging the common law." *United States v. Tucker, supra* note 3, at 407 A.2d 1069 (D.C.1979). Rather, the common law is an evolving body, and therefore a contemporary court ruling on the basis of common law must take into account not only how the early English courts viewed an issue, but also how the courts of recent decades have treated it.

Turning to the issue before us, it is clear that the great majority of jurisdictions have accepted the existence of a continuing duty on the part of parents to support disabled children beyond the age of majority, if not by virtue of statute enacted by the legislature,[7] then by rule of law adopted by the courts. *See* Hurowitz, *Support Practice Handbook* § 12.12, at 463

---

**6.** The holding of *Pocialik* was that once a child has reached majority in a physically and mentally sound state, and the parental duty of support has terminated, the duty cannot be revived even though the child later becomes incapacitated.

**7.** *See, e.g., Ferrer v. Ferrer,* 138 Ariz. 138, 140 n. 1, 673 P.2d 336, 338 n. 1 (App.1983) (quoting A.R.S. § 12–2451(A): "Every man and woman shall have the duty to provide all reasonable support for his or her natural and adopted minor, unemancipated, children, ... and in the case of mentally or physically disabled children, if the court ... deems it appropriate, the court may order support to continue past the age of

majority."); *Crenshaw v. Thompson,* 280 S.C. 203, 203–05, 311 S.E.2d 742, 742–43 (App.1984) (quoting Section 14–21–810(b)(4) of the Code of Laws of South Carolina (1976) (current version at § 20–7–420), which provides for the court "[t]o make all orders for support run until further order of the court, except that orders for support of a child shall run until the child is eighteen years of age ... or, where there are physical or mental disabilities of the child or other exceptional circumstances that warrant it, in the discretion of the court, during any period and beyond the child's minority as such physical or mental disabilities may continue.'").

(1985) ("A majority of American jurisdictions hold that the parents have an obligation to provide for the support of their adult disabled child."). Indeed, the vast majority of *courts* considering this issue in the absence of statute have found that the developing *common law imposes such a* duty. For example, in *Davis v. Davis*, 246 Iowa 262, 67 N.W.2d 566 (1954), the court considered whether a parental support obligation existed to an adult child who "is unable to maintain himself, an illness in childhood impaired a portion of his brain.... [He] ... is a victim of cerebral meningitis since he was a year old, requires constant attention, and his mother devotes virtually all her time to his care." *Id.* 67 N.W.2d at 568. The Iowa Supreme Court concluded that

> [i]t is true ... that generally at common law a parent's obligation to support his child ends when the latter becomes of

age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for the support ceases. Courts throughout the land have so held emphatically and eloquently. This case plainly falls within this exception to the general rule.

*Id.*

The *Davis* court's assertion that courts throughout the land have recognized a common law parental duty of support is at least as valid today as it was in 1954. Indeed, our review of apposite cases demonstrates overwhelming support for the conclusion that a parental support obligation exists with respect to adult offspring who are physically or mentally disabled.[8]

---

8. *E.g., Towery v. Towery*, 285 Ark. 113, 115, 685 S.W.2d 155, 157 (1985) ("We have held the duty to support a child does not cease at majority *if* the child is mentally or physically disabled in any way *at* majority and needs support"); *Perla v. Perla*, 58 So.2d 689, 690 (Fla.1952) ("Generally, the obligation of a parent to support a child ceases when the child reaches majority, but an exception arises when the child is, from physical or mental deficiencies, unable to support himself." (citing *Borchert v. Borchert, supra*, 185 Md. 586, 45 A.2d 463 (1946)); *In re Glass' Estate*, 175 Kan. 246, 248–50, 262 P.2d 934, 937 (1953). A parent has a common-law duty to provide support and maintenance for his minor children and ... such duty extends and remains unchanged to a child who, on becoming of age, is in such feeble ... condition physically and mentally as to be unable to maintain and support itself; *Prosser v. Prosser*, 159 Kan. 651, 653, 157 P.2d 544, 546 (1945) ("it is a generally accepted rule that where a child on becoming of age is in such a feeble and dependent condition physically or mentally as to be unable to support himself the parental obligations and duties toward such a child remain unchanged."); *State ex rel. Kramer v. Carroll*, 309 S.W.2d 654, 660 (Mo.App.1958) (recognizing a parental duty of support: "our courts should depart from the common law rule of nonliability to support an adult child if that rule is not suited to the conditions and needs of the people of the state.... A large majority of the courts of sister states, forsaking the hard rules of the common law and following the 'dictates of humanity,' enforce the exception and continue the obligation into majority if the child is physically or mentally incapable of maintaining himself."); *Kruvant v. Kruvant*, 100 N.J.Super. 107, 118,

241 A.2d 259, 264–65 (App.Div.1968) (on the basis of common law, "we conclude that where, as here alleged, an adult son of a divorced husband becomes so disabled as to be incapable of maintaining himself because of a mental illness or emotional disorder which pre-existed his attaining his majority, the husband may be required at the suit of the wife to contribute to the cost of his necessary care and maintenance."); *Wells v. Wells*, 227 N.C. 614, 617, 44 S.E.2d 31, 33–34 (1947) (the age of majority "was arbitrarily fixed at common law for the termination of the child's minority ... and the rule has remained in force throughout the United States" so that at that point the parental duty of support normally ends; however, "if a child be so defective in mind or in body as to be incapable of providing his own maintenance when he reaches the age of twenty one years, the rule does not remove the disability and has no application to the status of the child."); *Castle v. Castle*, 15 Ohio St.3d 279, 283, 473 N.E.2d 803, 806–07 (1984) [t]he common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority; *Commonwealth ex rel. Cann v. Cann*, 274 Pa.Super. 274, 277, 418 A.2d 403, 404–05 (1980) (finding that daughter "was unable to fully support herself because of an acknowledged mental deficiency" sufficient to justify trial court's determination on the basis of common law that father not be relieved of his legal duty of support); *Sayne v. Sayne*, 39 Tenn. App. 422, 426–27, 284 S.W.2d 309, 311–12 (1955) (adopting the "majority rule" that common law

The rationale most consistently found in these opinions mirrors that of the trial court in the instant case. Judge Eilperin concluded that "[t]he most compelling justification for the common law obligation is that, like minors, incapacitated adults depend on their parents for support." *Memorandum and Order, supra,* at 2444. The trend among courts considering this issue is to recognize the parental duty of support for the adult disabled child as a *natural extension* of the common law obligation of support for minor children. Thus, it has been said that

> [t]he duty and obligation of a parent to care for his offspring does not necessarily terminate when the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult child may from accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessary assistance.

*Crain v. Mallone,* 130 Ky. 125, 127–28, 113 S.W. 67, 68 (1908). Stated another way, "there is no magic in the age of majority. Courts must look beyond the historical connotations and examine the facts and equities of each case." Washburn, *Post–Majority Support: Oh Dad, Poor Dad,* 44 Temp.L.Q. 319, 355 (1971). We are persuaded that the reasoning of the trial court in the instant case, and that of the many courts across the land that have considered

this issue, represents a sound approach to the issue at hand, and provides an adequate basis for this court's recognition under the common law of a parental duty of support for physically or mentally disabled children beyond the age of majority. Our inquiry, however, cannot end here.

In order to conclude that the common law duty in question exists in the District of Columbia, it is necessary to ascertain that no applicable statute precludes or abolishes it. In the absence of such a statute, the "[common law] duty remains the common law of this jurisdiction." *Faunteroy v. United States,* 413 A.2d 1294, 1300 (D.C. 1980). Looking to the D.C.Code, it is clear that no statute has been enacted that negates the duty in question, nor does appellant contend that there has been such an enactment. *See* brief of appellant at 6–7 n. 3. Appellant does argue, however, that promulgation of the comprehensive "Mentally Retarded Citizens Constitutional Rights and Dignity Act of 1978," now codified at D.C.Code § 6–1901 (1981), evidences legislative recognition of the absence of such a common law duty on the part of parents respecting their adult disabled children. Appellant then argues that legislative recognition of the absence of this common law duty, coupled with (1) the legislature's passage of the 1978 Act and (2) the legislature's failure to include a provision requiring parents to support their adult disabled children, is somehow inconsistent with the trial court's conclusion that there is a common law duty of support. We are not persuaded.

The Council report that accompanied the Retarded Citizens Act makes clear that the Act was intended more as a revision of the

parental duty of support extends beyond age of majority for child unable to support and care for itself); *Van Tinker v. Van Tinker,* 38 Wash. 2d 390, 391, 229 P.2d 333, 334 (1951) (recognizing the rule that "the legal duty of a parent to support his normal children ceases at the age of majority, but if any of them are so defective as to be incapable of self-support he owes a continuing obligation of support as long as it is necessary. This obligation is one created by the common law.").

Finally, our neighboring jurisdiction of Virginia appears to recognize a common law duty on

the part of parents to support mentally disabled children beyond the age of majority. *Johnson v. Johnson,* 1 Va.App. 330, 338 S.E.2d 353, 354 (1986), citing *Indemnity Insurance Co. v. Nalls,* 160 Va. 246, 168 S.E. 346, 347 (1933) ("the weight of authority is to the effect that such a duty rests upon the father."). In addition, the Virginia Code provides that parents are responsible for supporting and maintaining children under the age of eighteen "or [a] child of whatever age who is crippled or otherwise incapacitated from earning a living." VA.CODE § 20–61 (1983).

District's commitment statute than an all-embracing act regarding retarded citizens. In fact, the Act was passed following a ruling by the federal district court (Pratt, J.) in a 1976 class action suit brought against the District of Columbia government by parents of a group of mentally retarded individuals living at the city's Forest Haven facility. *See Evans et al. v. Washington,* 459 F.Supp. 483 (D.D.C.1978) (mentally retarded residents have constitutional right to habilitation in the least restrictive environment; institution required to develop and implement certain programs and refrain from certain actions).[9] The legislative history of the 1978 Act makes clear that, far from a comprehensive bill intended as the final word on all D.C. law relating to the mentally disabled, the Act was, for the most part, a careful revision of procedures relating to civil commitment of mentally impaired persons. It also expresses the developing policy in favor of enabling mentally ill and retarded citizens to remain in the community.

 The 1978 Act addresses the rights and responsibilities of citizens in relation to the state; it does not implicate, let alone conclusively resolve, intrafamily duties and responsibilities such as those involved in the instant case. In any event, appellant is unpersuasive in his argument that the 1978 Act's silence with respect to a parental support obligation for disabled adult children somehow precludes this court from recognizing such a duty because, absent a purpose to rescind the common law, courts will not give a statute that effect. *Duvallon v. District of Columbia,* 515 A.2d 724, 726 (D.C.1986). Accordingly, we conclude that no action on the part of the legislative branch, nor any lack of action signifying a legislative intention to remain silent on the issue, precludes a finding by this court of a common law parental duty to support adult disabled children.[10]

One final consideration remains. Neither this court nor the legislature of the District of Columbia has yet addressed the existence of a parental duty of support for adult disabled children. A prudent court must recognize that there will exist some uncharted areas, untouched by either legislative or judicial action, in which the courts may be importuned to act first but preferably should defer to the legislative branch, recognizing that that branch is better suited to address the issue that has been raised.[11] We consider this to be a weighty consideration. We are satisfied, however, that this court runs no such risk with today's holding. The instant facts do not create a situation requiring deference to the legislature. Appellant has not pointed to any complexities that could be addressed by the legislature but not by the holding of this case, and the fact that a great many of our sister jurisdictions have already taken the judicial path we choose encourages us to conclude that the principle we espouse is properly part of the common law.

### III.

Having concluded that a common law obligation exists, we now proceed to appellant Mr. Nelson's second contention, *viz.,* that the trial court erred in concluding that appellant failed to prove a material change in circumstance sufficient to modify his previous court ordered payment schedule.

Generally speaking, where the court has entered an original order of child support, motions to modify the level of payments are governed by the standard enunciated in *Hamilton v. Hamilton,* 247 A.2d 421 (D.C.

---

9. This fact was acknowledged in the Council's *report accompanying the new law, which stated* that "[t]his bill ... revises our existing commitment statute and provides an orderly legal mechanism for carrying out Judge Pratt's order." Committee Report, Bill 2-108, the "Mentally Retarded Citizens Constitutional Rights and Dignity Act of 1978," 5 (July 20, 1978).

10. Similarly, we reject appellant's argument that D.C.Code §§ 21–586, –1101 (1981) also should preclude an affirmative finding by this court

respecting existence of a common law parental duty of support for adult disabled children.

11. *See generally* Posner, *The Meaning of Judicial Self–Restraint,* 59 IND. L.J. 1, 18 (1983) (explaining that Holmes, Brandeis, and Frankfurter "the leading judicial exponents of self-restraint ... thought the courts ought to be deferring to the other branches of government more than they were doing.").

1968). *See Albus v. Albus*, 503 A.2d 1229, 1231 (D.C.1986). Under *Hamilton*, the trial court must determine whether there has been a "material change in the circumstances of the parties—a change which affects either the father's ability to pay or the needs of the minor children. Absent such a showing, the original decree is conclusive upon the parties." 247 A.2d at 422–23. Because the trial court must balance many factors in ordering a modification of support obligations, specific written findings are necessary to enable the reviewing court to ascertain whether the trial court has considered all relevant matters, and also how it has resolved conflicting claims. *Albus, supra*, 503 A.2d at 1233 n. 6.

■ "While a trial court has broad discretion in making an original award of alimony or support, *Smith v. Smith*, 344 A.2d 221, 223 (D.C.1975), its discretion is limited when modifying such an order by the requirement that the modification be anchored in the original decree and reflect only changes since that decree." *Tennyson v. Tennyson*, 381 A.2d 264, 266–67 (D.C.1977). Ordinarily, "[m]odification of a final decree of child support is justified only when the proponent of change bears the burden of proof that there has been a material change in the needs of the child or the ability of the parents to pay." *Id.* at 266. This court reviews a trial court's decision regarding modification of support obligations under an abuse of discretion standard. *Hamilton, supra*, 247 A.2d at 424.

■ In the instant case, Judge Eilperin, in denying appellant's motion for support modification based upon material change in circumstances, apparently based his decision on appellant's failure to carry his burden of persuasion. Judge Eilperin stated that "[w]hile Mr. Nelson's financial circumstances may have changed over the last 10 or 12 years, the court is not convinced that the change has materially affected his ability to support Melonie." *Memorandum and Order, supra*, at 2444. In essence, Judge Eilperin concluded that appellant's purported inability to pay was the result not of a change in his financial condition but rather of Melonie's reaching the age of majority.

We think it unnecessary to reach the question of whether the trial court abused its discretion in finding that Mr. Nelson failed to demonstrate a material change of circumstance, however, because we agree with Mr. Nelson's argument on appeal that the novel circumstances of this case justify the trial court's taking a hard and fresh look at the financial situation of all concerned parties. This is not to fault the procedure followed by the trial court. As the first part of this opinion makes clear, the trial court and the parties were navigating in uncharted waters because the issue of parental support for a disabled adult child had yet to be addressed in the District of Columbia. Appellant himself did not advance the argument that this unusual factual posture required the trial court to depart from ordinary procedures respecting modification of child support and instead consider the support obligation afresh. Rather, appellant quite understandably proceeded in accordance with the precedents that placed upon him the burden of proving a material change in circumstance. The issue as framed at trial did not afford the court the opportunity to pass on the more general question of how Melonie's support needs should most fairly and reasonably be met now that she has reached the age of majority.

Despite our conclusion above that a disabled child's reaching the age of majority is, for purposes of her need for continued support, a rather artificial benchmark, it does not follow that the child's attaining majority should be without legal consequence. Given the significance the law attaches to one's reaching majority in ordinary circumstances, it is reasonable to require a reassessment of parental support obligations when a disabled child reaches that age, a reassessment not limited by the terms of the original support order. Different considerations come into play when parents face an almost indefinite obligation to support a disabled child. By way of illustration, Melonie's reaching the age of twenty-one may affect her eligibility or lev-

el of benefits under various governmental assistance programs, private insurance plans, or other programs intended to help meet the needs of those unable to care for themselves fully. These matters, of course, must be addressed in the first instance in the trial court, and so remand of the case is the appropriate disposition of this appeal. We make no effort to delimit the scope of inquiry upon remand as the trial court works with the parties to establish post-majority support obligations. Obviously the inquiry will be multifaceted.[12] For example, as amicus curiae District of Columbia Association for Retarded Citizens states in its brief, an individual such as Melonie "can be expected to have the potential for paid, productive employment" and therefore the trial court may wish to apply certain normalization principles, in which Melonie would be exposed to conditions of everyday living as close as possible to those of most persons. Brief of amicus curiae at 6. Thus, in passing on Mr. Nelson's support obligation, the trial court "might include a requirement that Mrs. Nelson make efforts to secure for Melonie appropriate vocational training." *Id.* at 7. In any event, we leave such issues for the trial court and the parties, as well as those agencies or other organizations that may be in a position to contribute to the resolution of issues that the courts of the District of Columbia have not faced before.

In sum, we hold today that there exists in the District of Columbia a common law duty on the part of parents to support their post-majority physically or mentally disabled children, and remand this case for further proceedings consistent with this opinion.

*So ordered.*

---

12. Amicus curiae District of Columbia Association for Retarded Citizens notes in its brief that there should be an inquiry into the child's financial resources, as well as those of the parents. An adult handicapped child might be entitled to certain governmental benefits that would constitute sources of support greater than those available to parents. Of course, the amount of support due would always be subject to revision on the basis of need or changes in the parents' or the child's financial situation. Brief of amicus curiae at 7.