Gianna Speri NEGRETTI, Appellant,

v.

Felix N. NEGRETTI, Appellee.

No. 91–FM–944.

District of Columbia Court of Appeals.

Submitted Jan. 26, 1993.

Decided March 9, 1993.

Gianna Speri Negretti, pro se.

Charles H. Mayer, was on the brief, for appellee.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Appellant challenges certain portions of a trial court judgment which granted her a divorce from appellee, disposed of the parties' property pursuant to D.C.Code § 16–910 (1989), and determined child support obligations. We remand the case for further consideration and explanation of one aspect of the property division, the full rationale for which is unclear. In all other respects, the judgment is affirmed.[1]

---

1. We rule on the basis of the record before us on appeal, which consists of many of the pleadings and exhibits but not any transcript of the proceedings. The responsibility is on the appellant to "provide the appellate court with a record sufficient to show affirmatively that error occurred." *Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 294 (D.C.1987). However, it does not appear that the difficulty leading us to remand the case would be resolved by access to the transcript.

## I.

After a separation of almost ten years, appellant sought a divorce from appellee. A seven day trial took place, with both sides represented by counsel, in which the trial court thoroughly explored the financial situations of the two parties, including past, present and future earning potential; the history and present condition of the relationship and the family; and the character and extent of the property involved. Appellant challenges the trial court's determination[2] of the proper distribution of property, the award of child support to be paid by appellant to appellee for the parties' then fourteen-year-old minor child who resides with appellee, and the denial of child support requested by appellant to be paid by appellee to support the parties' then twenty-four-year-old daughter.

## II.

It has been settled for many years that the trial court has broad discretion in distributing property accumulated during marriage pursuant to § 16–910(b). *See, e.g., Bowser v. Bowser*, 515 A.2d 1128, 1130 (D.C.1986); *Hairston v. Hairston*, 454 A.2d 1369, 1371 (D.C.1983). The court must consider all factors relevant to the case before it and make its final determination based on an assessment of the circumstances as a whole. "So long as the trial court considers all relevant factors, its conclusions will not be disturbed on appeal." *Bowser, supra*, 515 A.2d at 1130. After reviewing the record presented in this case, we find that the trial court's distribution did not exceed the court's broad discretion, with one possible exception.

The one area of the trial court's property distribution that raises some concern is the division of the parties' equity interest in a home on Oliver Street in northwest Washington. The trial court's findings of fact show that the parties purchased the Oliver Street home for $97,000 in December, 1978. The parties made the purchase before they had sold their previous residence on Matey Road in Silver Spring, Maryland. This led the parties to borrow some $40,000 from appellant's mother to assist them in purchasing the Oliver Street home.[3] The balance of the purchase price was paid with a combination of a $10,000 earnest money deposit made by appellee and a mortgage loan of $52,000.

Almost a year later, the parties sold the Matey Road home, receiving $42,870 in proceeds.[4] The full amount of proceeds was given to appellant for the purpose of repaying her mother's loan for the Oliver Street home and an earlier loan intended to assist in the purchase of the Matey Road home. Appellant did not repay her mother with these funds, at least not by physically transmitting such a sum to her; rather, she deposited the funds into her personal bank account. Appellant separated from appellee and moved out of the Oliver Street home in 1982.

In the trial court's conclusions of law, it determined that the Oliver Street home was marital property under D.C.Code § 16–910(b), subject to distribution. The court concluded, after considering "the totality of the circumstances," that it was "equitable, just and reasonable that the marital home … be awarded to the [appellee] upon payment to the [appellant] of twenty percent (20%) of the current equity value in the home, less the $42,870 received by the [appellant]."[5] It is the offset of $42,870—close to eliminating the interest of appel-

---

2. The trial court's findings of fact and conclusions of law are set forth in detail in a 43-page opinion.

3. $37,756 of the $40,000 was actually put toward the purchase of the Oliver Street home.

4. It appears undisputed that this sum represented marital property.

5. In awarding 80% of the equity to appellee, the court noted, *inter alia*, that appellant had made no financial contribution to the house in the decade since separation, that all mortgage payments and other costs had been paid by appellee, and that appellee had borne almost all the support costs of the two younger children left with appellee, aged 5 and 12 at the time of separation. As already indicated, we find no abuse of discretion in the basic percentage division of the equity.

lant in the equity—that presents the difficulty on appeal.[6]

The court did not clearly explain the theory under which it connected the receipt of the $42,870 to the amount of equity that appellant was entitled to in the Oliver Street home. Appellant testified at trial that she kept the money only after her mother told her to do so. Appellant alleged that her mother knew that appellant would need money soon in that she was going to separate from her husband.[7] In its Findings of Fact and Conclusions of Law, the trial court did not address this testimony or its effect (if any) on the court's determination.[8] When presented with appellant's claim in her Motion to Amend, see note 7, *supra*, that she was "penalized" by the deduction, the court only reiterated that the money had been given to appellant for the sole purpose of repaying the loan from her mother but that appellant had "utilized these monies for her own personal use and benefit." The court stated that it was

> unaware of any legal or equitable theory which would support [appellant's] general entitlement to these monies, particularly, where, as here, the record is quite clear that [appellant] neither provided any monies to maintain the marital home nor provided any monies to provide for the maintenance and support of the parties' two sons.

The court was therefore "satisfied that the subject offset remains appropriate."

■■■■ As we had occasion to remark in another case involving the explanation of division of marital property, a trial court's "findings of fact, conclusions of law and judgment, taken together, must present an integrated, internally consistent and readily understood whole." *Bowser, supra,* 515 A.2d at 1130. We cannot readily ascertain from the court's decision or its order denying the motion to amend the full reasoning for the offset of the $42,870 in the determination of appellant's share of the marital home, and thus we cannot fairly assess whether this was an abuse of discretion.

Although the decision to impose the offset may indeed have been based on wider considerations, it appears that an underlying theory may have been that when appellant kept for herself the money given to her to repay her mother's loan, she functionally had received a distribution in that amount of her equity interest in the Oliver Street property. This might well have been the case if, for example, the mother's loan were a commercial second mortgage on the home. But here, it does not seem impossible to cast the course of events as a constructive repayment of the mother's loan, followed by an inter vivos gift of that same sum by the mother to appellant, her sole heir. See note 6, *supra*. This being a possible interpretation of the apparently undisputed events, we are puzzled by the

---

6. At the time of trial, the Oliver Street home had a tax assessment value of approximately $290,000. The then outstanding amount of the mortgage was approximately $45,000, thereby creating a marital property equity of approximately $245,000. This figure, of course, disregards the loan from the mother, who died in 1981, leaving appellant as her sole heir. It does not appear that the loan constituted a lien upon the property or that the loan continues to be considered outstanding and unpaid. Appellant's twenty percent of the equity amount would be approximately $49,000 from which the $42,870 would be deducted, leaving only $6,130.

7. In her Motion to Amend Findings of Fact and Modify Judgment, appellant asserted that she testified to this effect. Appellee, in his opposition to the motion, did not contest this assertion. Nor did the court, in its Memorandum Opinion and Order denying the motion, indicate that it disbelieved that testimony.

8. In discussing the offset, the court stated that it considered appellant's receipt of the $42,870 to be

> a significant factor in the Court's ... distribution of the marital home. This money was tendered to [appellant] for a specific purpose, to repay her mother for monies borrowed in connection with the purchase of the Matey Road and the Oliver Street homes. However, instead of using the money for its intended purpose, [appellant] deposited the money in her personal account for her individual use and enjoyment and did not repay her mother. Under these circumstances, this Court is satisfied that it is equitable, just and reasonable that this amount be offset against the twenty percent (20%) of the equity value due to [appellant] by this Court's Judgment and Order.

trial court's assertion that there does not exist "any legal or equitable theory which would support [appellant's] general entitlement to those monies." Accordingly, we remand this case for further consideration and clarification of the imposition of the offset. *See Stansel v. American Sec. Bank,* 547 A.2d 990, 994–95 (D.C.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989) (remand appropriate where appellate court could not determine how trial court calculated attorney's fees award); *Williams v. Ray,* 563 A.2d 1077, 1080 (D.C.1989) (remand appropriate for clarification of hourly rate used to award compensation for work performed with respect to the administration of an estate).

### III.

■ The trial court ordered appellant to pay child support in the amount of $150 per month for the then fourteen-year-old minor child who resided with appellee. The court noted that although appellant was unemployed, she had investment accounts, property in Italy and a bank account with a balance of over $40,000. Additionally, appellant had testified at trial that she was able to give her adult daughter $400–$500 per month to help with her daughter's expenses. In its findings of fact, the trial court also found that appellant had made money in the past and "possesses marketable skills which will allow her to secure employment and to produce income from that endeavor." *See Freeman v. Freeman,* 397 A.2d 554, 556 (D.C.1979) ("the ability to pay is not merely a function of actual earnings but is to be derived, more broadly, from earning capacity in the current job market, given one's educational background and work experience"). Traditionally, the trial court is invested with "broad discretion" in determining the rights of minor children to support, and in an original action for support, the trial

court's exercise of discretion "will not be set aside for abuse unless the order of support is not reasonably related to the court's written findings with respect to the needs of the persons to receive such support and the ability of the payor to pay." *Wright v. Wright,* 386 A.2d 1191, 1194 (D.C.1978); *see also Roberson v. Roberson,* 297 A.2d 769, 771 (D.C.1972) (child support is a matter committed to trial court's discretion and ability to pay is one of the factors to consider). This discretion has, of course, been somewhat limited by the enactment of the Child Support Guidelines, D.C.Code § 16–916.1 (1992 Supp.). The trial court "decline[d] to apply" these guidelines to make its determination of the amount of child support to be paid, explaining that appellant had no discernible gross income from which to apply the guidelines. However, we see no reason to explore in the abstract the correctness of this apparent eschewal of the guidelines, since there appears little doubt that, on the record here, the guidelines would justify the amount actually awarded.[9] We find no abuse of discretion in the child support award imposed on appellant.

### IV.

■ The trial court denied appellant any child support for the parties' twenty-four-year-old daughter. The general rule in the District of Columbia is that "a parent's legal duty to support a child terminates when that child reaches the age of majority." *Nelson v. Nelson,* 548 A.2d 109, 111 (D.C.1988). The age of majority for purposes of child support in the District is twenty-one. *Id.* In *Nelson,* this court recognized an exception to this general rule in certain cases where adult children are physically or mentally disabled. However, here the trial court specifically found that although the daughter is "emotionally troubled," she is able to assume responsibility

**9.** For example, the guidelines provide that the situation of a noncustodial parent with an income of less than $7,500 be considered on an individual basis. Such a noncustodial parent should normally be ordered to pay at least $50 per month with individual circumstances to be considered in assessing whether a greater

amount can be paid. *See* D.C.Code § 16–916.-1(e)(2) (1992 Supp.). The amount above $50 is a discretionary decision to be made by the trial court, and "[i]f the individual circumstances permit, a noncustodial parent with an income below $7500 shall be ordered to contribute more." *Id.*

for her own maintenance and support.[10] We find no error in the determination that the condition of the parties' daughter did not warrant a continuation of support beyond her majority within the criteria of *Nelson.*

For the reasons stated herein, the case is remanded for further proceedings on the issue of the deduction of $42,870 against appellant's share of the equity in the Oliver Street home. The judgment is otherwise affirmed.

*So ordered.*

---

**10.** The trial court found that the daughter could work, live alone, transport herself, maintain a checking account, purchase her necessities, pay her rent and other bills, drive and maintain an automobile, successfully matriculate in a college, have friends and otherwise "have some semblance of a normal quality of life."